Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| IGLESIA PENTECOSTAL M.I. (MOVIMIENTO INTERNACIONAL)<br><br>Apelante<br><br>v.<br><br>RICARDO L. GONZÁLEZ VILELLA; LA IGLESIA DE DIOS PENTECOSTAL BARRIO PIEDRA GORDA, INC.<br><br>Apelados | KLAN202400217 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Sobre: Interdicto Posesorio, Sentencia Declaratoria<br><br>Caso Núm.: CM2023CV00862 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

*…Si vosotros permaneciereis en mi palabra, seréis verdaderamente mis discípulos; y conoceréis la verdad, y la verdad os hará libres.*[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de octubre de 2024.

El **6 de marzo de 2024**, la Iglesia de Dios Pentecostal M.I. (Movimiento Internacional), compareció ante nos mediante el recurso de apelación. Solicita que revisemos la *Sentencia Parcial* dictada y notificada el 27 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante; "TPI"). Mediante el referido dictamen, fue desestimada su solicitud de interdicto posesorio.

Inconforme, la Iglesia de Dios Pentecostal M.I., solicitó la reconsideración de la determinación. Sin embargo, la misma fue denegada el 7 de febrero de 2024.[2]

---

[1] Nuevo Testamento de la Biblia. Juan 8:31 – 59.
[2] Notificada en la misma fecha.

Luego de evaluar detenidamente la totalidad de los *autos* y el derecho aplicable, **revocamos** la *Sentencia Parcial* apelada. **Veamos.**

**-I-**

El **13 de febrero de 1922**, fue incorporada en Puerto Rico la Iglesia de Dios Pentecostal M.I. (Movimiento Internacional) como una organización religiosa sin fines de lucro (en adelante; "IDPMI, Inc.," "Organización" o "parte apelante").[3] Como parte de su ministerio evangelizador, está organizada y reglamentada a través del vigente **Reglamento Iglesia de Dios Pentecostal Movimiento Internacional Región de Puerto Rico** (en adelante; "Reglamento"), el cual, entre otras, declara que el nombre de esta organización es: **IGLESIA DE DIOS PENTECOSTAL MOVIMIENTO INTERNACIONAL, INC.** (en adelante; "IDPMI, Inc."), y tiene su sede en la ciudad de San Juan, Puerto Rico.[4] De igual modo, dispone cómo se organiza el gobierno y la administración de todos los recursos (humanos, muebles e inmuebles) de la iglesia. En específico, el sistema de gobierno de la región de Puerto Rico es por delegación representativa, en la cual, la administración está a cargo de un **Ejecutivo Regional** compuesto por once (11) miembros que, a la vez, actúan como Ejecutivo Regional para asuntos legales, según lo contempla la Constitución General.[5]

Desde la década de 1940 la Iglesia de Dios Pentecostal M.I., Inc., estableció una humilde congregación en el Bo. Piedra Gorda de Camuy. Conforme al cuerpo reglamentario, el **24 de febrero de 1960** la IDPMI, Inc., estuvo representada por su ministro Pedro Rosario y fue donataria del siguiente predio de terreno:

PREDIO DE TERRENO en el barrio Piedra Gorda de Camuy, P.R., sitio de El Ojo de Agua, que mide treinta y tres pies de

---

[3] Véase, el Certificado de Existencia de la IDPMI, Anejo 5 de la Parte Apelante, pág. 17.
[4] Véase, el Reglamento vigente, Anejo18 de la Parte Apelante, págs. 123 – 265.
[5] Véase, el Artículo III, Sección A y B del Reglamento vigente, Anejo18 de la Parte Apelante, pág. 20.

frente por cuarenta y siete pies de fondo, o sea superficie total de mil quinientos cincuenta y un pies cuadrados (1551 p/c.). En lindes: Norte con Juan Hernández Cancel; Sur con camino Vecinal; Este con el cedente; Oeste Juan Hernández Cancel y sucesión de Juan Hernández Borges.[6]

De igual modo, el **27 de marzo de 1971** la IDPMI, Inc., estuvo representada por el reverendo Pedro Rosario Alvarado, en la compraventa por $1,350 de la propiedad inmueble, otorgada mediante escritura pública a favor de la Iglesia de Dios Pentecostal del Bo. Piedra Gorda de Camuy:

RUSTICA: Predio en el Bo. Piedra Gorda de Camuy, P.R. de NOVECIENTOS METROS CUADRADOS (900) igual a nueve áreas. Linda al Norte 30 metros carretera municipal; SUR en 27.30 metros Rafael Román; ESTE en 32.52 metros; OESTE en 33.52 metros Rafael Román.[7]

Desde entonces, en los predios de terrenos antes indicados, fue construida, remodelada y ampliada la **Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy y otras facilidades por los diversos lideres pastorales nombrados y supervisados por la IDPMI, Inc. Además, se construyó la nueva casa pastoral y el 1 de noviembre de 1981 fue comprado un solar en las parcelas de Piedra Gorda, lo cual dio paso a la edificación de un amplio templo de extensión. Ante el crecimiento de la feligresía, aumento de guaguas de transporte, facilidades de escuela bíblica y la ampliación del templo principal, el **14 de julio de 1984** la iglesia fue reinaugurada por el entonces pastor Manuel Echevarría Laureano nombrado por el liderato de la IDPMI, Inc.[8]

---

[6] Véase, Donación, Anejo 10 de la Parte Apelante, pág. 99.

[7] Véase, la Escritura Pública de 27 de marzo de 1971, Anejo 11 de la Parte Apelante, págs. 100 – 103. Además, en 1992 la IDPMI, Inc., autorizó al entonces pastor, Rdo. Félix Núñez Prieto a gestionar ante el Negociado de Contribución sobre la Propiedad del Departamento de Hacienda de Puerto Rico la exención contributiva permitida por ley para el solar de 900 metros cuadrados, adquirida el 27 de marzo de 1971, mediante escritura pública y donde se construyó la **Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy. Véase, Carta de Hacienda, Anejo 12 de la Parte Apelante, pág. 104.

[8] Véase, la Historia de la Iglesia de Dios Pentecostal del Bo. Piedra Gorda de Camuy, Anejo13 y 14 de la Parte Apelante, págs. 105 – 113. Cabe destacar que en los primeros 50 años de la IDPMI, Inc., en el Bo. Piedra Gorda de Camuy, el primer pastor nombrado fue el hermano Juan Román Pérez en 1948; luego siguió el hermano Ángel Morales Agosto en 1952 y al ser trasladado continuó el hermano Clemente Sepúlveda; en 1957 el nuevo pastor fue el hermano Pedro Rosario Alvarado por un periodo de 20 años; luego del traslado del pastor Rosario en 1977, le siguió el hermano Braulio Rosado quien fue trasladado en 1981, y le sucedió en el pastorado el hermano Manuel Echevarría Laureano hasta el 1987, que fue

A través de los años, la IDPMI, Inc., continuó administrando sus bienes y conforme a su constitución y reglamento, en el 2010 nombró como pastor de la **Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy, al Sr. Ricardo L. González Vilella (en adelante; "señor González Vilella" o "apelado"), quien sustituyó al entonces saliente pastor Luis A. Rosado Roche.[9]

Mientras ejercía como pastor de la **Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy, el **21 de mayo de 2021** el señor González Vilella y otros feligreses, crearon —**sin notificación ni autorización alguna de la IDPMI, Inc.**— una corporación con el nombre de: **Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc.** (en adelante; "apelada"). Así, se autodenominó como Presidente y Pastor de dicha corporación y abrió una cuenta bancaria **independiente** de la IDPMI, Inc.

El **8 de octubre de 2023**, el pastor González Vilella, junto a 78 feligreses, presenta su **renuncia y desafiliación** de la IDPMI, Inc., y de su nombramiento como pastor de la **Iglesia de Dios Pentecostal Barrio Piedra Gorda MI**. La referida carta lee como sigue:

> 08 de octubre de 2023
>
> **A:** IGLESIA DE DIOS PENTECOSTAL MI MOVIMIENTO INTERNACIONAL
>
> **ASUNTO:** DESAFILIACIÓN
>
> Por medio de la presente le notificamos que tanto su Presidente y Pastor Ricardo L. González Vilella, como la junta local y miembros de La Iglesia Pentecostal Barrio Piedra Gorda INC. se **desafilia** de forma inmediata e irrevocablemente, **dado por concluida toda actividad y compromiso a Iglesia de Dios Pentecostal MI Movimiento Internacional**. **Por lo antes expuesto hago entrega de mis credenciales**. No obstante, continuaré como Presidente y Pastor de La Iglesia Pentecostal Barrio Piedra Gorda INC.
> Esta decisión fue tomada mediante asamblea extraordinaria el Domingo, 08 de octubre de 2023. Adjunto listado de miembros en conformidad con esta decisión.
> Atentamente,
> Ricardo L González Vilella - Presidente y Pastor

---

sustituido por el hermano Félix Núñez Prieto. Para el 1995 fue nombrado el hermano Gilberto Rosado Martínez.
[9] Véase, Demanda, Anejo 2 de la Parte Apelante, pág. 9.

Martina Harrison Cruz – Secretaria
Gladys Serrano Cordero – Sub Secretaria
Héctor Hernández Delgado – Tesorero
Caroline Rosa Hernández – Sub Tesorera
Elsie Román López – Vocal.[10]

En respuesta a la carta de renuncia y desafiliación, el **25 de octubre de 2023** la representación legal de la IDPMI, Inc., le envió la siguiente misiva (vía correo certificado) al señor González Vilella para que, conforme a la constitución y el Reglamento vigente, entregara lo bienes muebles e inmueble retenidos. La misiva reza como sigue:

25 de octubre de 2023

Sr. Ricardo L. González Vilella       *Vía Correo Certificado*
Presidente
La Iglesia Pentecostal Barrio Piedra Gorda, Inc.
HC 01 Box 5068
Camuy, PR 00627-9164

Re: **Iglesia de Dios Pentecostal, MI, Carretera 119, Km. 1.0, Bo. Piedra Gorda, Camuy**

Estimado pastor González Vilella:

La Iglesia de Dios Pentecostal MI, Inc., ha contratado nuestros servicios para representarle legalmente en lo relacionado a la iglesia en referencia.

En su reciente misiva a nuestro representado, con fecha del 8 de octubre de 2023, usted notificó su desafiliación "inmediata e irrevocable" e hizo entrega de sus credenciales como **Ministro Ordenado de la Iglesia de Dios Pentecostal, MI, Región de Puerto Rico**. Dicha carta y su contenido se encuentran bajo evaluación eclesial de nuestro representado.

**Sin embargo, usted se ha mantenido ilegalmente en posesión de la propiedad inmueble de la iglesia, entiéndase el edificio y el terreno en el que está enclavado, y todos sus bienes muebles**. Es importante recordarle que el Reglamento de la Iglesia de Dios Pentecostal, MI, dispone en su Artículo XV, Sección A, que "todos los Títulos de Propiedad se registran a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional, **institución que es propietaria única**" con el propósito de evitar "que alguien se apropie de sus bienes inmuebles". El inciso (1) del referido artículo y sección claramente establece que "toda propiedad adquirida por la Región es registrada a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional Región de Puerto Rico".

En cuanto a sus responsabilidades, el inciso (8) del referido Artículo XV, Sección A, obliga a todo ministro, al cesar sus funciones con la Organización, a entregar a esta o a la persona designada "**toda propiedad mueble o inmueble**

---

[10] Véase, Carta de Desafiliación, Anejo 15 de la Parte Apelante, págs. 114 – 117. Énfasis nuestro.

**de la Iglesia que tenía bajo su custodia mientras ocupaba tal posición**". Más específico aun, el inciso (9) dispone que "en caso de renuncia o destitución de un Pastor(a), la feligresía no puede abrogarse la facultad de apropiarse ni adueñarse de las propiedades (templos, solares, cuentas bancarias, vehículos, mobiliario, entre otros), **ya que son patrimonio de la Organización**".

Los actos ilegales en los que usted está incurriendo y aquellos que a todas luces pretende lograr, son constitutivos de delito conforme a nuestro Código Penal de Puerto Rico.

### Artículo 181. - Apropiación ilegal

Incurrirá en delito menos grave, toda persona que ilegalmente se apropie sin violencia ni intimidación de bienes muebles pertenecientes a otra persona en cualquiera de las siguientes circunstancias:

- (a) Cuando se toma o sustrae un bien sin el consentimiento del dueño,
- (b) Cuando se apropia o dispone de un bien que se haya recibido en depósito, comisión o administración, o por otro título que produzca obligación de entregarlos o devolverlos,
- (c) Cuando mediante engaño se induce a otro a realizar un acto de disposición de un bien.

### Artículo 196. - Usurpación

Incurrirá en delito menos grave, toda persona que realice cualquiera de los siguientes actos:

(c) despoje ilegalmente a otro de la posesión de un bien inmueble o de un derecho real de uso, usufructo o habitación constituido sobre un bien inmueble.

### Artículo 202. - Fraude

Será sancionada con pena de reclusión por un término fijo de ocho (8) años, toda persona que fraudulentamente con el propósito de defraudar:

(b) realice actos u omisiones que priven a otra persona o afecten los derechos o intereses patrimoniales sobre bienes inmuebles o bienes muebles para perjuicio de ésta, del Estado o de un tercero.

### Artículo 211. - Falsificación de documentos

Toda persona que con el propósito de defraudar haga, en todo o en parte, un documento, instrumento o escrito falso, mediante el cual se cree, transfiera, termine o de otra forma afecte cualquier derecho, obligación o interés, o que falsamente altere, limite, suprima o destruya, total o parcialmente, uno verdadero será sancionada con pena de reclusión por un término fijo de tres (3) años.

**Sirva la presente de notificación y aviso para que en los próximos cinco (5) días del recibo de esta misiva, usted tenga a bien entregarle a la Iglesia de Dios Pentecostal, MI, lo siguiente:**

- **a)** Todas las llaves del templo, debidamente identificadas con las puertas, portones o accesos relacionados;
- **b)** Un inventario detallado de todos los bienes muebles de la iglesia, incluyendo, pero sin limitarse a los bancos, sillas, mesas, equipo de sonido, computadoras, televisores, vehículos, entre otros.
- **c)** Todo documento de la propiedad inmueble, de los muebles y cualquier otro que se relacione con estos;

**d)** Toda información y los accesos de las cuentas bancarias de la iglesia, de cuentas en las redes sociales y/o páginas de internet, así como acceso a cualquier otra cuenta electrónica o digital de la iglesia.

**e)** Estados de cuentas bancarias a nombre de La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc., con número de incorporación 465682, desde su fecha de inscripción el 21 de mayo de 2021 hasta la fecha de su carta de renuncia el 8 de octubre de 2023, que refleje toda transferencia, depósito, y/o movimiento de dinero de la iglesia.

De no cumplir con lo dispuesto en la presente y dentro del término provisto, procederemos con los trámites legales pertinentes, **tanto civiles como criminales**.

Esperamos su pronta respuesta y acción correspondiente.

Cordialmente,

Lcdo. Héctor A. Albertorio Blondet.[11]

El **31 de octubre de 2023**, el señor González Vilella le envió una carta a la representación legal de la IDPMI, Inc., en la que le respondió lo siguiente:

LA IGLESIA DE DIOS PENTECOSTAL BARRIO PIEDRA GORDA, INC.
HC 01 Box 5068
Camuy, PR 00627-9164

31 de octubre de 2023

Lcdo. Héctor A. Albertorio Blondet
Nexus Legal & Consulting
1519 Ave. Ponce De León
Suite 1115 Santurce, PR 00908

RE: CARTA 25 DE OCTUBRE DE 2O23

Estimado Lcdo. Albertorio Blondet

Espero que esta carta le encuentre en buen estado de salud y ánimo. Me dirijo a usted en nombre de La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc. y en mi capacidad como presidente de la misma, el Reverendo Ricardo L. González Vilella.

Quiero abordar un asunto de gran importancia que ha sido motivo de la comunicación de referencia. Le informo que, **de acuerdo con la escritura número 57 otorgada ante el notario Rafael Román Orama en el año 1971, la propiedad en cuestión fue adquirida por la Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc.** Como resultado de ello, no tenemos obligación de entregar la propiedad ni los inmuebles que han sido adquiridos con las ofrendas y los diezmos generosamente donados por nuestros hermanos y hermanas en la fe.

Es importante mencionar que todos los gastos relacionados con la adquisición y mantenimiento de la propiedad han sido

---

[11] Véase, Carta de la IDPMI, Inc., Anejo 16 de la Parte Apelante, págs. 118 - 120. Énfasis nuestro.

sufragados por La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc. No hemos recibido ningún tipo de aportación económica por parte de la Iglesia de Dios Pentecostal M.I., ni un solo centavo, **más allá de préstamos del Departamento de Pensiones, los cuales fueron pagados en su totalidad**. Además de otros financiamientos o préstamos necesarios para estos fines que La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc. ha obtenido a través de diversas cooperativas.

Además, me gustaría aclarar que **la cuenta bancaria asociada a la corporación es propiedad exclusiva de La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc**. En consecuencia, no estamos en la obligación de proporcionar información o acceso a esta cuenta, ya que no es de pertenencia a la Iglesia de Dios Pentecostal M.I.

Entendemos que este asunto puede generar preocupación y preguntas. Sin embargo, deseamos o aclarar que lo estamos abordando con la mayor responsabilidad y respeto.

En caso de que haya otros asuntos relacionados con La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc., le invitamos a ponerse en contacto con el Lcdo. Juan Carlos Miranda, 61 Calle Francisco Vega Sur P.O. Box 291 Humacao, PR 00792, Teléfono 787-850-4360, Fax. 787-852-4262, email: mirandalegal@gmail.com. El Lcdo. Juan Carlos Miranda funge como Abogado para nuestra iglesia, El podrá brindarle la asistencia necesaria y responder a sus preguntas.

Los miembros de La Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc. agradecemos su comprensión y respeto en este asunto. Confiamos en que podremos resolver cualquier inquietud de manera justa y equitativa.

Que Dios le bendiga abundantemente.
Cordialmente,
Rev. Ricardo L. González Vilella.[12]

El **1 de diciembre de 2023**, la IDPMI, Inc., incoó una *Demanda* juramentada sobre interdicto posesorio y sentencia declaratoria contra la corporación: Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc., y el señor González Vilella (en conjunto; "parte apelada").[13] Pertinente a la controversia que nos corresponde atender, la IDPMI, Inc., alegó que la parte apelada la había despojado de su inmueble. Explicó que, **a espaldas de la IDPMI, Inc.**, el señor González Vilella quien era el pastor nombrado por la autoridad de la parte apelante, creó la corporación **Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc.**, (de igual nombre que la Iglesia que pastoreaba, excepto que eliminó las iniciales **MI**) y se

---

[12] Véase, Apéndice, a la pág. 182. Énfasis nuestro.
[13] Anejos 2 y 3 de la Parte Apelante, págs. 6 – 14.

apropió del inmueble y de las ofrendas. Adujo que, mediante una carta con fecha del **8 de octubre de 2023**, el pastor González Vilella presentó su **renuncia como pastor de la Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy, y junto a otros feligreses se **desafilió** de la IDPMI, Inc. Sin embargo, **y en contra del Reglamento de la IDPMI, Inc.,** el pastor se negó a devolver la posesión del inmueble localizado en la Carretera 119, Intersección 496 Km.3 Hm.6, Barrio Piedra Gorda, Sector Ojo de Agua de Camuy, Puerto Rico. Por lo que, entre otras cosas, la parte apelante solicitó un interdicto posesorio con el fin de recobrar la posesión del inmueble descrito.

Luego de varias incidencias procesales, el **26 de diciembre de 2023** se celebró la vista en su fondo en torno al interdicto posesorio solicitado.[14] En la vista las partes presentaron prueba documental, entre estas: **(1)** los certificados de existencia de ambas corporaciones,[15] **(2)** el Reglamento de la IDPMI, Inc. (revisado 2018),[16] y **(3)** la Carta de Renuncia fechada el 8 de octubre de 2023 del señor González Vilella como pastor de la **Iglesia de Dios Pentecostal MI Bo. Piedra Gorda,** y la **desafiliación de la IDPMI, Inc**.[17] Además, como testigo de la parte apelante declaró la Sra. Olga Iris Rivera Acevedo (en adelante; "señora Rivera Acevedo"),[18] quien declaró, en lo pertinente, que:

> *P: ¿Y en el tiempo que usted estuvo en esa iglesia, y los años venideros, verdad, bajo qué nombre estaba esa iglesia?*
> *R: Me levanté y me desarrollé ahí como la Iglesia de Dios Pentecostal Movimiento Internacional.*
> *P: A preguntas de nosotros, y usted claramente ha contestado que ha tenido un vínculo directo con esa iglesia, verdad, en términos personales, le pregunto, **¿qué si algo, usted sabe acerca del terreno, del templo, de los bienes inmuebles que están allí, qué, si algo, sabe de eso?***

---

[14] Véase, *Transcripción de la Prueba Oral* (TPO) del 26 de diciembre de 2023.
[15] Cabe señalar que la parte apelante sometió solamente su certificación del Departamento de Estado. *Véase*; el Anejo 5 de la Parte Apelante, pág. 17.
[16] Anejo 18 de la Parte Apelante, págs. 123 – 265.
[17] Además de ser la renuncia, la misiva informó la desafiliación inmediata e irrevocable a la IDPMI. *Véase*; Anejo 15 de la Parte Apelante, págs. 114 – 117.
[18] Véase, *Transcripción de la Prueba Oral* (TPO) del 26 de diciembre de 2023, a las págs. 19 – 40.

*R: Bueno, no tengo mucho conocimiento con relación a eso. Sí sé que tuvimos una iglesia, lo que es una capilla que estaba en la parte más baja y luego se adquirió el templo principal, que es donde está ubicado, pero no tengo mucho conocimiento realmente de los documentos.*

*P: Doña Olga, y le pregunto, ¿en el tiempo que usted tuvo relación con esa iglesia, cuántos pastores aproximadamente pasaron por allí?[19]*

*[ . . . ]*

*P: ¿Dijo, dijo cuántos?*

*R: **Doce ministros hasta ahora, aproximadamente**.*

*P: Doce ministros hasta ahora, aproximadamente. Y le pregunto, **¿quién nombra esos ministros?***

*R: El Ejecutivo Regional, lo designa…*

***LCDO. EMANUELLI:*** *Juez, nuevamente… ¿verdad?, y disculpe, es que tenemos objeción, porque es que estamos entrando en lo que viene siendo el Reglamento y cómo funciona la directiva de la Iglesia, que entendemos que eso es totalmente ajeno al interdicto posesorio.*

***LCDO. GAUD:*** *Con la venia del Tribunal. Lo que pasa, Vuestro Honor, es que la prueba que se está presentando es para determinar cuáles son las funciones de un pastor en esa iglesia local y **es necesario establecer cuáles son las funciones de un pastor en una iglesia local para determinar si puede ejercer acciones de dominio de posesión**.*

***SR. JUEZ: Se le permite la pregunta, adelante.***

***LCDO. EMANUELLI:*** *Juez, nosotros queremos, solamente para dejar constancia, verdad, en el registro. En la medida que lo que se le pida al Tribunal es hacer una determinación sobre unas funciones de una persona bajo un Reglamento para saber la, si procede o no procede un interdicto posesorio, entendemos que eso escapa el alcance del interdicto posesorio.*

***SR. JUEZ: Se permite, adelante.***

***LCDO. ALBERTORIO:*** *Gracias, Juez.*

*P: Y entonces, me estaba contestando **cómo se escogían o se nombran esos pastores**.*

*R: Cuando una iglesia queda vacante, el pastor para esa congregación **lo escoge o lo designa el Obispo, el Presidente de la Iglesia de Dios Pentecostal es el que escoge el candidato para la congregación**.*

*P: Y doña Olga, le pregunto, ¿cómo funciona la administración de esa iglesia? ¿Verdad?, entiendo que por el Reglamento todas son iguales, pero esa, ¿esa iglesia en particular, cómo funciona la administración de esa iglesia?*

*R: Bueno, **la administración de esa iglesia está dirigida por el pastor en propiedad**, ¿verdad?, **una Junta local que lleva los documentos e informes que se rinden a la Iglesia, tanto financieros como estadísticos**.*

*P: ¿Y qué poderes, si alguno, verdad, tiene, tiene ese grupo, ese pastor y ese grupo que usted dijo? ¿Cómo es que se le, cómo es que se le llama al grupo?*

*R: **Junta local**.*

*P: La Junta local, **¿qué poderes tiene?***

*R: Bueno, los poderes que tiene es mayormente trabajar relacionado al funcionamiento de la iglesia, programas de la iglesia, cualquier otra gestión que sea de edificación en la iglesia, **pero en cuestión de propiedades, incluso la Junta local no puede hacer nada sin la autorización del Ejecutivo**.*

---

[19] *Véase*, TPO, a la pág. 27 línea 7 a la pág. 28 línea 1.

*P: Doña Olga, le pregunto, de acuerdo a su conocimiento, ¿quién es el pastor más reciente en la Iglesia del barrio Piedra Gorda?*

*R: Ricardo González.*

*P: ¿Y desde cuándo, si sabe, verdad, aproximadamente, no tiene que ser tan específica, pero desde cuándo, si sabe, fue nombrado el pastor Ricardo González?*

*R: Deben ser algunos, no sé exactamente el tiempo, y algunos nueves o diez años.*

*P: Y le pregunto doña Olga, usted qué, si algo, sabe del, nos estaba hablando ahora mismo de que, el pastor hasta recientemente y que hubo una controversia.*

*R: Sí.*

**P: ¿Qué, si algo, sabe de las razones por las cuales el pastor terminó? ¿Está o no está?**

*R: Bueno, la controversia surge porque él muestra, envió una carta de renuncia, se reúne con el Obispo, renuncia como ministro de la Iglesia de Dios Pentecostal y el Obispo lo informa al Ejecutivo en pleno.[20]*

*[. . .]*

*LCDO. ALBERTORIO: Le pregunto, testigo, ¿qué tiene en sus manos, puede describirnos lo que tiene ahí?*

**R: La carta de renuncia del pastor Ricardo González.**

*P: ¿Puede, puede describirlo, verdad, superficialmente, describir el documento, para estar claros?*

*R: Dice "A", va dirigido hacia nosotros. Cuando digo "nosotros", es al Concilio en pleno. Asunto, la desafiliación. Y pues la renuncia a ser pastor nuestro.*

*P: ¿Usted había visto esa carta anteriormente?*

R: No la había visto como tal, pero sí nos lo notificaron al Ejecutivo en pleno.

*P: Testigo, le pregunto, **¿quién se encuentra actualmente en posesión de la Iglesia, de la Iglesia de Piedra Gorda?***

*R: Ricardo González, el pastor actual.*

**P: Y le pregunto, ¿las funciones del pastor Ricardo, como usted explicó ahorita, las funciones del pastor Ricardo se limitaban a qué? Aparte de la pastoral, ¿verdad?**

**R: Pues sólo lo administrativo de la Iglesia, trabajar en la Iglesia, cuidar, aconsejar, pastorear.[21]**

*[. . .]*

*P: Doña Olga, le pregunto, **¿cuándo fue la renuncia?***

**R: El 8 de octubre.**

*P: El 8 de octubre. Y le pregunto, ¿a raíz de esa renuncia, cómo funciona entonces el pastorado, si renunció a la …[22]*

*[. . .]*

*LCDO. ALBERTORIO: Juez, le, simplemente la pregunta es en el conocimiento de ella del Reglamento que se presentó ya, como funciona entonces el pastorado de él si renunció a la Organización.*

*LCDO. EMANUELLI: Por eso, Juez, pero es que se le está pidiendo..*

*LCDO. ALBERTORIO: No es una opinión, es un conocimiento...*

*LCDO. EMANUELLI: . . .algo especulativa en base a algo que, que...*

*SR. JUEZ: Adelante, se le permite la pregunta.*

**TESTIGO: Nuestro Reglamento dice que si un pastor renuncia a la Iglesia de Dios Pentecostal, debe entregar**

---

[20] *Véase*, TPO, a la pág. 28 línea 19 a la pág. 31 línea 22.
[21] *Véase*, TPO, a la pág. 32 línea 12 a la pág. 33 línea 9.
[22] *Véase*, TPO, a la pág. 33 línea 23 a la pág. 34 línea 2.

> *todas las propiedades, todas las propiedades, sea, templo,*
> *casa, guaguas, toda propiedad queda en manos del*
> *concilio de la Iglesia de Dios Pentecostal una vez ese*
> *ministro renuncia, así lo estipula el Reglamento.*
>
> **LCDO. ALBERTORTO:** *Y le pregunto,* ***¿conforme a su***
> ***conocimiento, ese proceso se ha realizado?***
>
> **R: No.**
>
> *P: No tenemos más preguntas, Juez.*[23]

Por su parte, la parte apelada brindó el testimonio del señor González Vilella, y la parte apelante tuvo la oportunidad de contrainterrogarlo.[24]

> ***DIRECTO DEL SR. RICARDO L. GONZÁLEZ VILELLA***
> *P: Muy bien. Don Ricardo, nuevamente, diga su nombre completo, por favor.*
> *R: Ricardo Luis González Vilella.*
> *P: Muy bien. Don Ricardo,* ***¿qué posición ostenta usted en la*** ***corporación Iglesia...*** *déjeme decirle el nombre completo,* ***la*** ***Iglesia de Dios Pentecostal del Barrio Piedra Gorda, Inc.***
> *R: El presidente de esa corporación.*
> *P: Muy bien. ¿Desde cuándo es usted el presidente de esa corporación?*
> *R: Desde mayo del 21.*
> *P: Muy bien.*
> **LCDO. GAUD:** *¿Mayo?*
> **LCDO. ALBERTORIO:** *Veintiuno.*
> **LCDO. GAUD:** *¿Veintiuno?*
> **LCDO. EMANUELLI:** *Mire,* ***¿y cuándo se formó esa*** ***corporación?***
> *R: Ese mismo año, mayo 21.*
> *P: ¿En mayo?*
> *R: Del 21, 2021.*
> *P: Mayo del 2021, muy bien. Mire,* ***¿desde cuándo la*** ***corporación, la Iglesia de Dios Pentecostal de Barrio*** ***Piedra Gorda, Inc., ha tenido la posesión del inmueble en*** ***controversia, del día de hoy?***
> *R: De ese mismo año, del 21 o 22 que, ya como año y pico* *que se, se hizo, se incorporó completo y se hizo la* *escritura, esto es un procedimiento legal.*
> *P: Muy bien. ¿Cuándo usted me dice "el procedimiento legal", a qué se refiere?*
> *R: A lo que, eso tiene un nombre, la, la escritura, que tiene un nombre, que, eso, la escritura.*
> *P: Muy bien.*
> *R: . . . la escritura legal de la iglesia por el Tribunal.*
> **LCDO. ALBERTORIO:** *Vamos a objetar...*
> **LCDO. GAUD:** *Aquí no se ha presentado ninguna escritura.*
> **LCDO. ALBERTORIO:** *De escritura.*
> **LCDO. EMANUELLI:** *Es que él está...*
> **TESTIGO:** *Sí, la palabra es, es que se me olvida. ¡Dios mío!* [25]
> *[ . . . ]*
> **LCDO. EMANUELLI:** *Juez, le vamos a pedir al Tribunal que se tome conocimiento sobre el* ***caso AR2021CV00888, un caso*** ***donde versa sobre un expediente dominio llevado cabo por*** ***la Iglesia de Dios Pentecostal, Barrio Piedra Gorda,*** ***Inc.*,...[26]
> *[ . . . ]*

---

[23] *Véase*, TPO, a la pág. 34 línea 17 a la pág. 35 línea 16.

[24] *Véase*, TPO, a la pág. 45 – 72.

[25] *Véase*, TPO, a la pág. 45 línea 23 a la pág. 47 línea 19.

[26] *Véase*, TPO, a la pág. 48 línea 10 a la línea 14.

*LCDO. EMANUELLI: . . . un expediente de dominio, el cual versa sobre la propiedad objeto en el presente caso. Y allí pues se emitió una Resolución por la, por la sala, esta misma sala, 401, Juez.*

*LCDO. GAUD: Con la venia del Tribunal. Nosotros vamos a objetar, para que se tome conocimiento judicial tiene que haberse notificado con anterioridad y no estar en conflicto ni en controversia. Se toma conocimiento en este momento de ese expediente de dominio, por ende, nosotros no sabemos de lo que trata y si es de lo que entendemos, eso va a ser retado en los Tribunales por (ininteligible) al Tribunal. Por tanto, no cualifica para la regla de conocimiento judicial.*

*SR. JUEZ: Bien. Estamos ante un interdicto posesorio. En términos de la aplicación de la regla es, aplica la misma con relación al interdicto preliminar en ese sentido. Se toma conocimiento judicial, ¿verdad? R2021 indicó, ¿verdad?[27]*

*[ . . . ]*

*LCDO. EMANUELLI: No vamos a entrar en detalle, es simplemente para constancia del Tribunal.*

*SR. JUEZ: Cómo no.*

*LCDO. EMANUELLI: Muy bien.*

*P: Así que, don Ricardo, le pregunto, ya me dijo entonces que desde ese mismo año, de mayo de 2021 la corporación, la Iglesia de Dios del Barrio... Pentecostal Barrio Piedra Gorda, Inc., había estado en posesión del inmueble.* **Le pregunto, ¿desde esa fecha hasta el presente alguien más ha estado en posesión de esa iglesia?**

**R: No**

*P: Duro, para que se escuche, con la voz.*

**R: No**.

*P: No. Muy bien.* **¿Alguien le ha perturbado la posesión desde el 2021 al presente?**

**R: No**.

*P: No. ¿Quién ha tenido entonces la posesión, vuelvo y, verdad, recapitulando, de la Iglesia?*

*R: La Iglesia Pentecostal del barrio Piedra Gorda Incorporado.*

*P: Bien. ¿Desde el 2021?*

*R: (Ininteligible)*

*P: Con la voz para que se escuche.*

*R: Sí.*

*P: Sí. Pues, nosotros no tenemos más preguntas para él.[28]*

**CONTRAINTERROGATORIO POR EL LCDO. GAUD:**

*P: Buenas tardes, testigo.*

*R: Buenas tardes.*

*P: Usted funcionó como presidente de una corporación, pero usted no ha declarado aquí que funcionó como pastor,* **¿verdad que no?**

*R: No, pa...*

*P: ¿No? ¿No, no funcionó como pastor, no declaró eso?*

**R: No lo expresé**.

*P: No, no...*

*P: No... (ininteligible)*

*P: . . . lo declaró, okey. Lo cierto es que usted presentó una carta de renuncia en octubre de este año a la parte demandante y que usted sometía los informes, ¿verdad que sí?* **¿Sometía los informes que tenía que someterle al Concilio?**

*R: ¿Antes de esa fecha?*

*P: Antes de esa fecha.*

*R: (No verbalizó la respuesta).*

*P: ¿Sí o no?*

*R: ¿De la renuncia?*

**P: Antes de la renuncia, sí.**

---

[27] *Véase*, TPO, a la pág. 49 línea 16 a la pág. 50 línea 11.
[28] *Véase*, TPO, a la pág. 51 línea 8 a la pág. 52 línea 11.

*R: Los informes que se hacían.*
*P: Los informes que se hacían, o sea, que usted estaba reconociendo que usted estaba como pastor bajo ese concilio, ¿sí o no?*
*R: Bueno, era...*
*P: La pregunta es sencilla.*
*R: Sí, está bien.*
*P: . . . usted estaba funcionando como pastor de esa...*
*R: (Ininteligible)*
*P: Y usted sabe...*[29]

[ . . . ]

*LCDO. GAUD:*
*P: ¿Y en esa carta usted le dice que está renunciando a la pastoral?*
*R: (No verbalizó la respuesta)*
*P: ¿Y usted le dice...*
*SR. JUEZ: Con la voz, por favor...*
*TESTIGO: Sí.*[30]

[ . . . ]

*LCDO. GAUD:*
*P: ¿Usted funcionaba como pastor de la iglesia demandante?*
*R: <u>Sí</u>.*
*P: ¿Y usted administraba las propiedades inmuebles y muebles de la iglesia demandante?*
*R: <u>Sí</u>.*
*P: ¿Usted estaba funcionando como pastor en representación de ella, de la parte demandada?*
*R: <u>Sí</u>.*
*P: Y usted nunca le dijo al Tribunal en esta Resolución que esa propiedad era de ellos, ¿sí o no?*
*R: (No verbalizó la respuesta)*
*P: ¿Sí o no?*
*R: Vuelva y repítame la pregunta.*
*P: ¿Usted nunca le dijo al Tribunal, cuando solicitaron esa Resolución, que esa propiedad era de la iglesia demandante?*
*R: <u>No se lo dije.</u>*
*P: No se lo dijo.*
*R: Porque no era.*
*P: ¿Y tampoco le dijo a la dueña de la propiedad que usted estaba llevando un expediente de dominio?*
*R: <u>No</u>.*
*LCDO. EMANUELLI: Juez, es que ya ahí estamos entrando en cuestiones, tenemos objeción, porque estamos entrando en . . .*
*LCDO. GAUD: Vamos a objetar... Vuestro Honor...*
*LCDO. EMANUELLI: ...cuestiones de... Estoy objetando, compañero, disculpe, verdad, el Tribunal. Estamos entrando en cuestiones de título que son las controversias que escapan al interdicto posesorio.*
*SR. JUEZ: Con lugar a la objeción, con lugar.*
*LCDO. GAUD: No, Vuestro Honor, él está usando esto para decir, desde que tiene esta Resolución está poseyendo la propiedad.*
*SR. JUEZ: Por eso, pero si usted va a impugnar el expediente de dominio, ese es otro procedimiento.*
*LCDO. GAUD: Vuestro Honor, pues entonces, si lo vamos a impugnar y tengo la prueba aquí, no procede el conocimiento judicial, era el argumento que íbamos a hacer cuando termináramos.*[31]

[ . . . ]

*SR. JUEZ: Eso es lo que, a eso estamos limitados.*
*LCDO. GAUD:*
*P: Okey.*

---

[29] *Véase*, TPO, a la pág. 52 línea 13 a la pág. 53 línea 21.
[30] *Véase*, TPO, a la pág. 54 línea 9 – 16.
[31] *Véase*, TPO, a la pág. 56 línea 1 a la pág. 57 línea 24.

*P: ¿Usted creó una corporación en qué año?*
*R: Veinte veintidós.*
*P: ¿Y se lo notificó usted a la parte demandante?*
*R: __No__.*
*P: Duro, que se oiga.*
*R: __No__.*
*P: ¿No? Pero, ¿usted no era el administrador de esa iglesia de la parte demandante?* [32]

[ . . . ]

*LCDO. GAUD:*
*P: ¿Y se le informó que usted inscribió esa corporación?*
*R: __No__.*
*P: ¿Y lo cierto es que sus órdenes pastorales en esa iglesia local eran conforme a la iglesia demandante?*
*R: (No verbalizó la respuesta)*
*P: Porque usted no ha dicho aquí que es pastor, usted dijo aquí que era presidente.* [33]

[ . . . ]

*TESTIGO:*
*R: No, no se lo dije.*
*LCDO. GAUD: No.* **Pero, usted conocía el Reglamento, usted llevaba 12 años, ¿verdad que sí?**
*R: (No verbalizó la respuesta)*
*P: ¿Sí o no?*
*R: __Sí__.*
*P: De hecho, los conoce, ¿no?*
*R: __Sí__. Qué pena.*
**P: ¿Y usted sabía que usted estaba administrando esa propiedad en nombre de la parte demandante?**
*R: (Ininteligible)*
*P: Eso dice el Reglamento.*
*R: __Sí__...*
*P: Usted me dijo que conocía el Reglamento.*
*R: (Ininteligible)*
*P: O sea, ¿usted está diciendo que el Reglamento nos dice que usted administraba en representación de la parte demandante?* [34]

[ . . . ]

*LCDO. GAUD:* **Conforme al Reglamento, usted administra para la parte demandante, nos dijo que sí.**
*R: __Sí__.* [35]

[ . . . ]

*LCDO. GAUD: O sea, ¿que cuando usted a preguntas del abogado declaró que usted llevaba poseyendo año y pico, usted no está seguro de eso ahora?*
*R: Sí, estoy seguro.*
*P: Pero si me acaba de decir que usted no estaba poseyendo.*
*R: Es que no te entendí, es que lo haces muy rápido y no me dejas pensar. Perdóname, Juez, es que...*
*P: Si el Reglamento... Usted dice que conoce el Reglamento,* **yo lo que le pregunto es si el Reglamento lo dice, que usted administra para ellos, que son los dueños propiedad.**
*R: __No recuerdo__.*
*P: ¿No lo recuerda?*
*R: No recuerdo.*
*P: Pero usted ahí ha sido pastor 12 años.*
*R: Soy pastor, usted lo dijo.*
*P: ¿Uh?*
*SR. JUEZ: Con la voz, con la voz.*
*TESTIGO: Soy pastor, sí.*
*LCDO. GAUD: Okey. Pero, ¿usted renunció a la pastoral en octubre, nos declaró aquí?*

---

[32] *Véase*, TPO, a la pág. 59 línea 1 – 12.
[33] *Véase*, TPO, a la pág. 59 línea 20 a la pág. 60 línea 2.
[34] *Véase*, TPO, a la pág. 60 línea 19 a la pág. 61 línea 13.
[35] *Véase*, TPO, a la pág. 62 línea 1 – 4.

*R: **Sí**.*
*P: **¿Quién lo nombró pastor?***
*R: **A mí me dijeron que iniciara el Concilio Pentecostal.***
*P: **Pero usted renunció.***
*R: **Sí**.*
*P: Por tanto, **¿ya esas credenciales no están vigentes?***
*R: **No**.*
*P: ¿Eso lo recuerda del Reglamento?*
*R: No recuerdo, pero...*
*P: No recuerda. **Mire a ver si al usted mandarle la carta de renuncia y desafiliación, usted se quedó en la propiedad...***
*R: **Sí**.*
*P: . . . **y no permitió que ellos actuaran como los dueños de la propiedad ni actuaran con la posesión de la propiedad, ¿verdad que no?***
*R: (No verbalizó la respuesta).*
*P: **¿Sí o no?***
*R: **Sí**.*
*P: O sea, que usted lo destruyó. No hay más preguntas.*
**SR. JUEZ:** *Es que no, no entendí muy bien la respuesta a la última pregunta, compañero. ¿Cuál fue...*[36]

[ . . . ]

**LCDO. GAUD:** *Vamos a leerles las preguntas para que el Tribunal esté claro.*
*P: Pues, entonces, **se le pidió que devolviera la llave de la propiedad, ¿sí o no?***
*R: **Sí**.*
*P: **Se le pidió que devolviera las cuentas de la propiedad, ¿verdad que sí?***
*R: **Sí**, **se pidió...***
*P: ¿Y usted no lo devolvió?*
**LCDO. EMANUELLI:** *Juez, tenemos objeción, porque lo que vienen siendo las cuentas de banco, los bienes muebles, esos no son parte del interdicto posesorio.*
**SR. JUEZ:** *Correcto.*
**LCDO. EMANUELLI:** *Se ha resuelto que el interdicto posesorio es solamente para bienes inmuebles.*
**SR. JUEZ:** *Correcto, con lugar.*
**LCDO. GAUD: ¿Usted devolvió las llaves de la propiedad?***
*R: **No**.*
*P: **Y se le pidieron, ¿verdad que sí?***
*R: **Sí**.*
*P: **Y usted tenía esas llaves desde un principio, porque usted administraba esa propiedad por el título de pastor que le dieron ellos, ¿sí o no?***
*R: **Sí**.*
*[ . . . ].*[37]

Examinada la prueba sometida, el TPI dictó *Sentencia Parcial* el **27 de diciembre de 2023**.[38] En esta, emitió las siguientes determinaciones de hechos:

*1. El demandado, Ricardo L. González Vilella comenzó a ejercer como Pastor en propiedad hace más de 10 años, cuando fue **designado por la Iglesia de Dios Pentecostal, M.I., en las facilidades que alberga la iglesia en controversia.***

---

[36] *Véase*, TPO, a la pág. 62 línea 19 a la pág. 64 línea 20.
[37] *Véase*, TPO, a la pág. 65 línea 15 a la pág. 66 línea 18.
[38] Anejo 1 de la Parte Apelante, págs. 1 – 5.

*2. Para **mayo de 2021, fue creada la "Iglesia de Dios Pentecostal Barrio Piedra Gorda Inc."**, siendo el señor González Vilella su Presidente.*

*3. Una vez creada la corporación antes mencionada, el señor González Vilella, continuó ejerciendo las funciones de Pastor de la iglesia, ejerciendo dichas funciones hasta el presente.*

***4. El 8 de octubre de 2023, la Iglesia de Dios Pentecostal del Barrio Piedra Gorda Inc. remitió una comunicación a la Iglesia de Dios Pentecostal M.I. (Movimiento Internacional) indicando que se desafiliaban de forma inmediata.***

***5. La demandante ha requerido tanto a la Iglesia de Dios Pentecostal Barrio Piedra Gorga, Inc. como al demandado Ricardo L. González Vilella que desocupe la propiedad en controversia y la misma sea entregada a la demandante, a lo que los segundos se han negado.***

***6. La demandante alega que, hasta el 8 de octubre de 2023, los demandados estuvieron en posesión del inmueble en representación de los demandantes, por lo que en esa fecha fueron interrumpidos en su posesión.***[39]

Ante estas determinaciones de hechos, el TPI expresó, en lo pertinente, que:

*[A]plicado lo anteriormente señalado a los hechos en el presente caso, <u>no existe controversia que los demandados han estado en la posesión de la propiedad en controversia, al menos desde mayo de 2021, cuando se constituyó la entidad corporativa Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc</u>. Los remedios que concede el interdicto posesorio están disponibles para aquellos que han sido interrumpidos en la posesión de la propiedad durante el año previo a la radicación de la demanda. Los demandantes reconocen que los demandados han estado en posesión de la propiedad, "en representación" de los demandantes. Independientemente en qué calidad hayan estado poseyendo los demandados, dicha afirmación reconoce que han sido los demandados los poseedores de la propiedad de manera ininterrumpida al menos desde mayo de 2021.*[40]

Por lo cual, el foro sentenciador desestimó la solicitud de interdicto posesorio de la IDPMI, Inc., y ordenó la continuación de los procesos en cuanto a la sentencia declaratoria.[41]

A pesar de que la IDPMI, Inc., solicitó la reconsideración del dictamen,[42] el TPI mantuvo su determinación.[43]

Inconforme, la IDPMI, Inc., presentó el **6 de marzo de 2024** el recurso apelativo que nos ocupa y señaló el siguiente error:

*ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR EL INTERDICTO POSESORIO BASADO EN QUE LA PARTE*

---

[39] *Íd.*, pág. 2. *Énfasis nuestro.*
[40] *Íd.*, pág. 4.
[41] *Íd.*, pág. 5.
[42] La moción fue presentada el 10 de enero de 2024. Véase, Anejo 27 de la Parte Apelante, págs. 318 – 323.
[43] La *Orden* fue emitida y notificada el 7 de febrero de 2024.

*DEMANDADA – APELADA ESTUVO EN POSESIÓN BASADO EN QUE LA PARTE APELANTE ESTUVO EN POSESIÓN DEL BIEN INMUEBLE EN CONTROVERSIA DESDE MAYO DE 2021, FECHA EN QUE SE INCORPORÓ "LA IGLESIA DE DIOS PENTECOSTAL DEL BARRIO PIEDRA GORDA, INC.", SIN IMPORTAR EN CALIDAD DE QUÉ ESTUVIERON OCUPANDO LA PROPIEDAD.*

Varios asuntos procesales después, el **29 de mayo de 2024** compareció la parte apelada mediante un *"Alegato de la parte apelada Ricardo González Vilella y la Iglesia de Dios Pentecostal Barrio Piedra Gorda, Inc."* Habiendo comparecido las partes, estamos en posición de resolver.

**-II-**

**-A-**

Resulta imprescindible que comencemos haciendo claro que estamos ante una Organización religiosa y sin fines de lucro que está constituida en Puerto Rico desde el **13 de febrero de 1922**. Bajo el manto constitucional libertad de religión y culto,[44] se gobierna y administra por un cuerpo de normas constitutivas y reglamentarias propias de la **Iglesia de Dios Pentecostal Movimiento Internacional Región de Puerto Rico**.

A esos fines procedemos a discutir el vigente **Reglamento Iglesia de Dios Pentecostal Movimiento Internacional Región de Puerto Rico** (en adelante; "Reglamento").[45]

El Artículo I del Reglamento dispone que el nombre de esta Organización es la **IGLESIA DE DIOS PENTECOSTAL MOVIMIENTO INTERNACIONAL, INC.** (en adelante; "IDPMI, Inc." u "Organización"), y la sede es en la ciudad de San Juan, Puerto Rico.

---

[44] *"El Congreso no aprobará ninguna ley que se aboque al establecimiento de religión alguna, o que prohíba el libre ejercicio de la misma; o que coarte la libertad de expresión o de prensa; o el derecho del pueblo a reunirse pacíficamente y a solicitar del Gobierno la reparación de agravios"*. Primera Enmienda de la Constitución Federal de Estados Unidos de América. 1 LPRA, a la pág. 182. Véase además, el Artículo II, Sec. 3 de la Constitución de Puerto Rico: *"No se aprobará ley alguna relativa al establecimiento de cualquier religión ni se prohibirá el libre ejercicio del culto religioso. Habrá completa separación de la iglesia y el estado"*. 1 LPRA, a la pág. 287.

[45] Véase, el Reglamento vigente, Anejo18 de la Parte Apelante, págs. 123 – 265.

El Artículo II del Reglamento establece la visión y misión de la IDPMI, Inc. En cuanto a la visión la Sección A dispone lo siguiente:

> Somos una Organización Eclesiástica Mundial en constante crecimiento, movilizada a la evangelización y el discipulado de naciones aun no alcanzadas a través del poder transformador del Espíritu Santo.

En lo referente a la misión de la iglesia, la Sección B del Artículo II del Reglamento reza como sigue:

1. Promueve y fortalece la unidad de los creyentes y mantiene la coordinación de las estructuras administrativas de la Iglesia de Dios Pentecostal, Movimiento Internacional.
2. Vigila porque se mantenga viva la experiencia del bautismo en el Espíritu Santo en los creyentes y la manifestación de los dones y ministerios del Espíritu Santo en la Iglesia, y estimular la búsqueda de esta gloriosa unción y dones.
3. Estimula y promueve la evangelización estableciendo esta Iglesia en todos los países que sea posible.
4. Envía misioneros, maestros y todo el personal que sea necesario para el establecimiento y la promoción de la obra en general.
5. Fomenta los fondos necesarios y adquiere los bienes útiles, lícito e indispensables para la promoción y desarrollo de la Iglesia.
6. Establece y mantiene los Departamentos y las Instituciones que sean necesarias para la propagación del Evangelio.
7. Trabaja por el mejoramiento espiritual, moral, social, intelectual de nuestra sociedad y coopera con las agencias que lo promueven.

El Artículo III del Reglamento establece el gobierno y la forma de administración de la IDPMI, Inc. En la Sección A se establece el tipo de gobierno:

> El sistema de gobierno de la región es por delegación representativa. Está enmarcado dentro de los límites de la Constitución y Reglamento. Puede legislar, en el uso de su autonomía, reunida en asamblea debidamente convocada, bajo la dirección del Espíritu Santo.

Por su parte, la Sección B del Artículo III del Reglamento dispone la forma en que se administrará de la IDPMI, Inc. En específico, establece que la administración estará a cargo de un Ejecutivo Regional que se compone de once (11) miembros con distintas funciones:

1. La Administración está a cargo de:
   a. Un **Ejecutivo Regional** – compuesto por once (11) miembros que, a la vez, actúan como Ejecutivo Regional para asuntos legales, según lo contempla la Constitución General. Artículo IV. Sección C, Letra E.

1) Son elegidos en forma alternada por dos (2) años; no más de cuatro (4) términos en la misma posición.

2) **Las posiciones reconocidas son:**
   a) Obispo
   b) Primer Vicepresidente
   c) Segundo Vicepresidente
   d) Secretario (a)
   e) Tesorero (a)
   f) Subsecretario (a)
   g) Subtesorero (a)
   h) Vocal I
   i) Vocal II
   j) Vocal III
   k) Vocal IV

El Artículo IV del Reglamento establece los requisitos, derechos y deberes del Ejecutivo Regional. La Sección A establece los **requisitos** que deben cumplir los once (11) miembros que componen el Ejecutivo Regional:

1. Estar física, mental, espiritual e intelectualmente capacitado (a).
2. Buen testimonio y conducta irreprensible. Contar con treinta (30) años de edad.
3. Ministro (a) Ordenado (a). Haber completado diez (10) años de experiencia pastoral, (excepto Presbíteros (as)).
4. Obispo (Presidente) (preferiblemente no trabajar secularmente y Vicepresidente(a)). Contar con cuarenta (40) años de edad, (excepto Presbíteros(as).
5. Graduado (a) de escuela superior o su equivalente. Graduado (a) de un Instituto Teológico o Seminario Teológico reconocido por la Organización.

La Sección B del Artículo IV del Reglamento se establece los **deberes y derechos** de los once (11) miembros que componen el Ejecutivo Regional:

1. Cumple y hace cumplir la Declaración de Fe, Constitución y Reglamento de la IDDPMI.
2. Cumple y hace cumplir los acuerdos tomados por la Asamblea Bienal y la extraordinaria, el Consejo Internacional, la Asamblea Regional y del Ejecutivo Regional.
3. **Puede adquirir, poseer, tener depósitos y evolucionar los mismos; usar o cambiar el uso de propiedades; vender, hipotecar, arrendar, permutar o realizar cualquiera otra transacción**

**que justifique la promoción de la obra de la iglesia hasta donde lo permita la Región. En las demás transacciones la Asamblea Regional establece la cantidad límite para hacerlo sin su consentimiento. En caso de las iglesias locales se hace en armonía con el Pastor (a) y la Feligresía.**

4. Estudia y otorga aprobación final a los presupuestos que le sometan los Directores de Departamentos y el Comité de Finanzas.

5. Es cuerpo de representación legal ante los organismos del gobierno cuando así fuera requerido. (Véase al Artículo XIV, Sección A, Numerales 3 y 6 del Reglamento General).

6. **Delega en la persona que creyere conveniente el poder de firmar escrituras y documentos legales cuando el Obispo o los Vice Presidentes del Ejecutivo no puedan hacerlo.**

7. Provee para llenar vacantes en el Ejecutivo Regional.

8. Asesora a los Departamentos, Comités y Juntas Locales sobre sus relaciones con la Región.

9. **Otorga los grados ministeriales y credenciales a los miembros del ministerio.**

10. Resuelve querellas entre pastores, iglesias y Juntas Locales que afecten las buenas relaciones.

11. Actúa en aquellos casos que, a su juicio, reclamen su injerencia en cualquier Departamento, Institución, Asociación, Fraternidad, Comisión o Iglesia Local.

12. Establece las cuotas a los asistentes a las Asambleas Regionales de acuerdo con las circunstancias prevalecientes.

13. Solicita los servicios de un Auditor por tres años consecutivos, renovables a discreción del Ejecutivo Regional.

14. Crea y suministra una Hoja de Evaluación para el trabajo del Pastor (a), de la Misionera (o) y el Pastor (a) Asistente (donde aplique). Disponiéndose que la misma no se le suministra a aquellos pastores que lleven dos años o menos en la congregación, así como aquellas pastores que lleven dos años o menos en la congregación, así como aquellas casos donde haya algún tipo de dificultad o controversia entre Pastor (a) y congregación.

15. **Toma control de toda propiedad (<u>templos</u>, <u>colegios</u>, <u>casas pastorales</u>, <u>solares</u>, cuentas bancarias, vehículos, mobiliario y otros <u>cuando un Pastor (a) o feligresía deciden renunciar o sean destituidos de nuestra Organización</u>.**

16. Audita los libros y cuentas bancarias de la Iglesia local cuando lo entienda pertinente.

17. Ofrece cursos de Educación Continuada a los Ministros (as) Ordenados (as) cada tres años.

18. Evalúa y analiza toda solicitud al ministerio de personas divorciadas y lo somete al Ejecutivo Internacional (Art. I Secc. B-11).

19. Evalúa y analiza toda solicitud de reingreso al ministerio (Art. XV Secc. B-2).

20. En aquel caso que conducta ministerial tenga bajo su consideración y encuentre que hay conflicto de

interés, el Ejecutivo Regional procede a sustituir al miembro pertinente.

21. Desarrolla un protocolo de acción que procure la restauración de aquellos miembros del Cuerpo Ministerial que hayan requerido alguna medida disciplinaria, con excepción de la reinstalación al ministerio de aquellos expulsados.

22. Dentro del orden reglamentario selecciona la fecha para la Asamblea Anual.

23. Contribuye con la supervisión de iglesias en todo lo relacionado con los aspectos administrativos y ministeriales de nuestras congregaciones, en común acuerdo con los Presbíteros (as) de Distrito.

24. En circunstancias de urgencia el Ejecutivo Regional entrevista candidatos al ministerio.

25. Desarrolla e implementa el Plan Estratégico en la Región.

La Sección C del Artículo IV del Reglamento se establecen las

**facultades y deberes** de cada miembro del Ejecutivo Regional:

1. **Obispo (Presidente) Regional**

   a. Cumple y hace cumplir la Declaración de Fe, Constitución y Reglamento de la Iglesia de Dios Pentecostal Movimiento Internacional.

   b. Nombra a todos los miembros de los Departamentos (Misiones, Educación Cristiana y Familia, ASSPEN y Finanzas) y nombra los miembros de los Comités Permanentes y Temporeros con el consentimiento del Ejecutivo Regional los somete a la Asamblea Regional para su elección final (Art. XX, Secc. C-i).

   c. Nomina los candidatos a Presidentes y Vicepresidente de las diferentes Asociaciones y Fraternidades asesorado por el Ejecutivo Regional.

   d. Nomina a todos los miembros de Conducta Ministerial y Apelativo Regional con el consentimiento del Ejecutivo Regional y los somete a la Asamblea Regional para su elección final.

   e. Nombra los miembros de los demás Departamentos, Comités Permanentes y Temporeros, con el consentimiento del Ejecutivo Regional, (con excepción del Comité Apelativo y de Conducta Ministerial.

   f. Nomina, con el consentimiento del Ejecutivo Regional, tres candidatos para la elección de los Presbíteros (as). (Véase el Artículo X, Sección E, Numeral 4 del Reglamento General).

   g. Es Presidente ex oficio de todos los Departamentos, Comisiones e Instituciones.

   h. **Firma los documentos legales y las escrituras de propiedades de las iglesias en representación de los demás ejecutivos y vela porque todas las propiedades sean registradas a nombre de la Iglesia de Dios Pentecostal Movimiento.**

   i. **Firma las credenciales de los miembros del Ministerio**.

   j. Firma toda nota de pago en unión al Tesorero (a) u otro Ejecutivo designado.

    k. **Nombra pastores (as) a las congregaciones y efectúa traslados con el consentimiento del Ejecutivo Regional**.

    l. Nombra, asesorado por el Ejecutivo Regional, al Director (a) del Evangelista Pentecostal.

    m. Ratifica, con el consentimiento del Ejecutivo Regional, las resoluciones aprobadas en las Asambleas de las Asociaciones y Fraternidades antes de éstas entrar en vigor.

    n. Supervisa la labor que realizan los Departamentos, las Instituciones y las Comisiones e informa al Ejecutivo Regional.

    o. Excepto en caso de emergencia, contando con el consentimiento del Ejecutivo Regional separará sumariamente de su cargo a cualquier miembro del Ministerio o funcionario de Departamento, Comisión, Institución, que no cumpla con la Declaración de Fe, Constitución y Reglamento de esta Organización, o que adultere las Doctrinas Fundamentales contempladas en la Declaración de Fe, o por cualquier otro asunto de moral reñido con nuestros principios y moral cristiana y lo somete a Conducta Ministerial para vista previa.

        1. En aquellos casos donde el Obispo (Presidente) entienda que no debe sumariar, por cuanto la falta es menos grave, no lo hará. Se entiende por "falta menos grave" las que conlleven suspensión temporera de las funciones ministeriales y censura.

    p. **Solicita los servicios de un auditor que intervendrá las cuentas de la Organización y todas sus dependencias.**

    q. Supervisa las iglesias y rinde un informe de sus labores a la Asamblea Regional.

    r. Realiza cualquier función reglamentaria inherente a su cargo.

    s. Desempeña el cargo a tiempo completo. Cesa sus funciones en el pastorado, y otros cargos que ocupe dentro de un periodo no menor de 45 días ni mayor de 90. Dicho periodo comienza desde la fecha en que fue elegido (a) a la posición.

    t. Nombra Subdirectores de Departamentos con el consentimiento del Ejecutivo Regional, donde aplique.

**2. 1er Vicepresidente**

    a. Ayuda al Obispo (Presidente) en su labor.

    b. Sustituye al Obispo (Presidente) en caso de ausencia, renuncia por incapacidad temporera o permanente, destitución o muerte.

        1. En tales casos tiene los mismos derechos, deberes y privilegios señalados al Obispo (Presidente); Disponiéndose que los Ejecutivos, en unión al Presidente General, determinan la forma de aplicar lo dispuesto en el Reglamento.

    c. Es oficial de enlace entre el Ejecutivo Regional y las Asociaciones y Fraternidades.

    d. Es Capellán (a) de los Campamentos que se organicen. En su defecto designa representantes.

      e.  Comparte con el Obispo (Presidente) la supervisión de los Departamentos Instituciones y Comisiones.

      f.  Cumple otras funciones que le asigne el Obispo (Presidente) o el Ejecutivo Regional.

      g.  Preside la Junta del Plan de Pensiones.

### 3. 2do Vicepresidente

      a.  Es el sustituto del Primer Vicepresidente.

      b.  Preside el Comité Evaluador de Solicitudes de Ingreso al Ministerio.

      c.  Comparte la Capellanía con el Primer Vicepresidente.

      d.  Representa la Organización cuando el Obispo (Presidente) lo requiera.

      e.  Comparte con el Obispo (Presidente) la supervisión de los Departamentos, Instituciones y Comisiones.

      f.  Cumple otras funciones que le asigne el Obispo (Presidente) o el Ejecutivo Regional.

### 4. Secretario (a)

a. Levanta y archiva las minutas y actas de la Asamblea Anual, Asambleas Extraordinarias y de las reuniones del Ejecutivo Regional.

b. Mantiene un archivo y registro exacto de los Miembros del Cuerpo Ministerial con sus grados así como de todas las congregaciones.

c. Guarda todos los documentos legales de importancia y todo lo que sea de valor actuando en todo aquello que sea propio de su cargo, según se lo ordene el Ejecutivo Regional.

d. Atiende y contesta toda la correspondencia que le encomiende el Obispo (Presidente) y archivará copia de la misma.

e. Vela por el uso correcto del Sello Oficial de la Iglesia.

f. Firma, en unión al Obispo (Presidente) todas las credenciales del Cuerpo Ministerial.

g. Cursa todas las citaciones, convocatorias y demás documentos que le ordene el Obispo (Presidente).

h. Rinde un informe laboral y estadístico a la Asamblea Anual.

i. Envía una circular mensual al Ministerio.

j. Envía a la Oficina Internacional los programas de Convenciones y actividades anuales con quince días de anticipación.

k. Envía a la Secretaría Internacional un directorio con la dirección completa de cada iglesia, el nombre y la dirección residencial del cuerpo ministerial y sus respectivos teléfonos.

l. Cumple otras funciones que le asigne el Obispo (Presidente) o el Ejecutivo Regional.

m. Adiestra al Subsecretario (a) en todo lo relacionado con la Secretaría.

n. Es Director(a) de la Oficina Regional.

o. Prepara, en armonía con el Ejecutivo Regional, un Manual de Procedimiento Administrativo que provea para el debido manejo del personal, compras, suministros y demás operaciones de oficina.

p. Envía al Cuerpo Ministerial toda resolución o enmienda aprobada en Asamblea no más tarde de 60 días después de culminada la Asamblea Regional.

q. Informa en Asamblea sobre el desarrollo del Plan Estratégico de la Región.

r.  Desempeña el cargo a tiempo completo. Cesa sus funciones del pastorado u otros cargos que ocupe, dentro de un periodo no menor de 45 días ni mayor de 90. Dicho periodo comienza desde la fecha que fue elegido(a) a la posición.

s.  Provee de directrices y supervisa al funcionario de recursos humanos.

t.  Identifica, mediante un censo, los recursos humanos que posee la Organización en diferentes áreas de desempeño. Este registro es conocido como Banco de Recursos.

u.  Custodia los expedientes del Banco de Recursos y los mantiene actualizados.

v.  Evalúa regularmente las necesidades del personal en todas las dependencias de la Organización.

### 5. Tesorero(a)

a.  Es Director (a) del Departamento Regional de Finanzas.

b.  Conserva un registro de todos los ingresos y egresos.

c.  Mantiene correspondencia con los Pastores (as) y Juntas Locales.

d.  Somete el Presupuesto anual de ingresos y gastos generales preparados por el Departamento de Finanzas al Ejecutivo Regional para su estudio y aprobación final.

e.  Envía ayuda a obreros necesitados con arreglo a las circunstancias económicas de la Tesorería y en acuerdo con los demás miembros del Ejecutivo Regional.

f.  Deposita a nombre de la Iglesia de Dios Pentecostal Movimiento (Internacional Región de Puerto Rico, en acuerdo con el Ejecutivo Regional, todo dinero recibido en una institución bancaria de reconocida solvencia y prestigio.

g.  Firma en unión al Obispo (Presidente) u otro oficial designado, toda nota de pago.

h.  Informa trimestralmente al Ejecutivo Regional los casos de aquellos miembros del Cuerpo Ministerial que no cumplan con los compromisos y obligaciones contraídos con la tesorería.

i.  Rinde un informe semestral y anual, o cada vez que se le requiera, al Ejecutivo Regional y un informe a la Asamblea Regional.

j.  Informa al Ejecutivo Regional sobre la condición financiera de la Organización.

k.  Asesora al Ejecutivo Regional en cuanto al impacto financiero de nuevos proyectos.

l.  Envía las aportaciones reglamentarias a la Tesorería Internacional, no más tarde del día 20 del mes que corresponda.

1.  El diezmo de los diezmos de las entradas generales.
2.  No menos del 60% de las entradas del Departamento de Misiones.
3.  El diezmo de los diezmos de las entradas de las Escuelas Bíblicas.

m.  Cumple con otras funciones que le asigne el Obispo o el Ejecutivo Regional.

n.  Adiestra al Subtesorero (a) en todo lo relacionado con la tesorería.

o.  Desempeña su cargo a tiempo completo. Cesa sus funciones en el pastorado u otros cargos que ocupe, dentro de un

período no menor de 45 días ni mayor de 90. Dicho periodo comienza desde la fecha que fue elegido (a) a la posición.

p. Es Tesorero (a) de todos los Departamentos de la Región.

### 6. Subsecretario(a)

a. Cumple y hace cumplir la Declaración de Fe, Constitución y Reglamento de la Iglesia de Dios Pentecostal Movimiento Internacional.

b. Sustituye al Secretario (a) cuando éste no pueda ejercer su cargo por razones justificadas.

c. Ocupa el cargo de Secretario (a) en la Asamblea cuando el Secretario (a) tuviere que ausentarse de la mesa.

d. Recibe adiestramiento del Secretario (a).

e. Ayuda al Secretario (a) en la preparación de los informes.

f. En caso de sustitución por renuncia, destitución o muerte, el Ejecutivo Regional determinará la forma de aplicar lo dispuesto en el Artículo IV Sección C Numeral 4 letra r.

g. Cumple otras funciones que le asigne el Obispo (Presidente) o el Ejecutivo Regional.

### 7. Subtesorero(a)

a. Sustituye al Tesorero(a) cuando éste no pudiera cumplir con sus obligaciones.

b. Es el Subdirector(a) del Departamento de Finanzas.

c. Ayuda al Tesorero(a) en la preparación de informes.

d. Cumple otras funciones que le asigne el Obispo (Presidente) o el Ejecutivo Regional.

e. Recibe adiestramiento por el Tesorero(a).

### 8. Vocales

a. Desempeñarán temporalmente tareas designadas por el Obispo (Presidente), las tareas correspondientes a cualquier incumbente cuando el sustituto en línea, por algún motivo, no pudiere.

1. Vocal I
   a. Ayuda al 1er Vicepresidente

2. Vocal II
   a. Ayuda al 2do Vicepresidente
   b. Ayuda al Secretario(a) y Subsecretario(a)

3. Vocal III
   a. Ayuda al Secretario(a) y Subsecretario(a)
   b. Ayuda al Tesorero(a) y Subtesorero(a)

4. Vocal IV
   a. Ayuda al Tesorero(a) y Subtesorero(a)
   b. Cualquier otra función que le asigne el Obispo (Presidente), o el Ejecutivo Regional

Luego del Ejecutivo Regional y sus once (11) miembros, en el orden jerárquico de la estructura organizativa de gobierno y administración de la IDPMI, Inc., el Artículo V del Reglamento establece la figura de los Presbíteros. En específico, la Sección A dispone los **requisitos** para ser Presbítero; a saber:

1. Estar física, mental, espiritual e intelectualmente capacitado (a).
2. Buen testimonio y conducta irreprensible.
3. Ministro (a) Ordenado (a) y dos (2) años de experiencia.
4. Contar con treinta (30) años o más de edad.
5. Preferiblemente que no trabaje secularmente.
6. Graduado (a) de una escuela superior o su equivalente y de un Instituto   Teológico o Seminario Teológico reconocido por la Organización.

La Sección B del Artículo V del Reglamento establece los **deberes** de los Presbíteros:

1. Representa al Ejecutivo Regional ante el Distrito correspondiente, y al Cuerpo Ministerial del Distrito ante el Ejecutivo.
2. Supervisa a las iglesias del Distrito y se relaciona con todas las actividades y movimientos de! mismo.
3. Visita las Iglesias del Distrito cada vez que fuere menester.
4. Investiga y atiende todo caso que le sometan las congregaciones del Distrito relacionado con problemas locales.
5. Rinde un informe inmediatamente después de la investigación al Ejecutivo Regional; disponiéndose que los casos simples son resueltos por él, pero los demás son tratados por el Ejecutivo Regional.
6. Evalúa y endosa las solicitudes de los candidatos (as) al ministerio en el Distrito, después que el Pastor (a) local lo haya firmado.
7. Informa al Ejecutivo Regional sobre las actividades que se realizan en el Distrito.
8. Envía a la Oficina Presidencial copias de los programas de actividades a llevarse a cabo en el Distrito con no menos de diez (10) días de anticipación.
9. **Instala los Pastores(as), Pastores(as) Asistentes y otros miembros del Cuerpo Ministerial con el consentimiento y en acuerdo con el Ejecutivo Regional. Si el Presbítero (a) es la persona que tiene que ser instalado (a) en su Distrito lo hará el Obispo (Presidente) otro Oficial designado (a).**
10. Rinde al Ejecutivo Regional un informe anual por escrito de sus labores realizadas y del estado general del Distrito.
11. Cumple otras funciones que le asigne el Obispo (Presidente) o el Ejecutivo Regional.
12. Vela por el establecimiento y desarrollo de las distintas Asociaciones, Fraternidades e instituciones reglamentarias.
13. Orienta a miembros del Cuerpo Ministerial que hayan dejado de cumplir con sus deberes en su distrito; disponiéndose que aquellos que no corrijan su actitud serán sometidos al Obispo (Presidente) y Ejecutivo Regional.

Por último, la Sección C del Artículo V del Reglamento establece el **modo de elección** de los candidatos(as) a Presbíteros:

1. Los Candidatos (as) a Presbíteros (as) son nominados por el Obispo (Presidente) con el consentimiento del Cuerpo Ejecutivo y electos por el Cuerpo Ministerial del Distrito correspondiente por mayoría simple.
2. Tres (3) por el Ejecutivo Regional (Véase el Art. X Secc. N, Numeral 1 letra a del Reglamento General).
3. Los Distritos eligen a su Presbítero (a) en elecciones alternadas (9 y 9).
4. El quórum necesario para la elección de Presbítero (a) será el treinta Por ciento (30%) del Cuerpo Ministerial.
5. En aquellos Distritos donde haya dificultad para elección del Presbítero (a) el Ejecutivo Regional se reserva el derecho de nombrarlo.

Por su parte, el Artículo VIII del Reglamento, declara y define el **ministerio** de la IDPMI, Inc.[46] En específico, la Sección C establece las siguientes **posiciones ministeriales** a cargo de llevar el mensaje evangelizador:[47]

Todo Ministerio Ordenado tiene derecho a una Credencial renovable cada dos (2) años. Los ministerios de Pastor(a), Evangelista, Capellán(a), Pastor(a) Asistente y Misionera(o) serán evaluados por el Ejecutivo Regional en todos sus grados, entendiéndose que todo el que ingresa al ministerio comenzará con una credencial aprueba.
La Organización reconoce y establece los siguientes ministerios:
    1. Ministro(a)
    2. **Pastor(a)**
    3. Capellán(a)
    4. Evangelista
    5. Pastor(a) Asistente
    6. Misionera(o) Licenciado(a)
    7. Maestro(a)
    8. Ministerio Especial

La Sección H del Artículo VIII del Reglamento establece los siguientes **deberes** del cuerpo ministerial:[48]

1. Predica el Evangelio y doctrina la Iglesia por medio de mensajes, que no estén conferencias, estudios bíblicos y otros medios lícitos en pugna con nuestros principios doctrinales.
2. Paga el diezmo puntualmente conforme a las normas de su Región. (Const.: Art. V, Sec. B - 3).
3. Atiende las funciones ministeriales (Art. XV, Secc. E).

---

[46] Véase, Artículo VIII del Reglamento, Anejo 18 de la Parte Apelante, págs. 163 – 183.
[47] Véase, la Sección C del Artículo VIII del Reglamento, Anejo 18 de la Parte Apelante, págs. 166 – 167.
[48] Véase, la Sección H del Artículo VIII del Reglamento, Anejo 18 de la Parte Apelante, págs. 172 – 176.

4. Tiene especial cuidado de aquellos que han sido fieles sostenedores de la Iglesia y, que por razones justificadas no asisten a las actividades de la Iglesia, o están parcialmente sean miembros del ministerio o laicos.

5. Lleva al Presbítero(a) aquellos problemas que surjan en la Iglesia y que él no pudiera resolver.

6. **Promueve la construcción de templos, capillas, casas pastorales, entre otras.**

7. **Vela por la conservación y el buen uso de los bienes de la Iglesia, cuyo <u>propietario</u> es la Organización.**

8. Reconoce las deudas o compromisos de la Iglesia Local y procura que sean saldadas dentro del plazo señalado.

9. Envía mensualmente los informes financieros a la Tesorería Regional.

10. Rinde anualmente a la Oficina Regional:
   a. Informe estadístico
   b. Informe financiero

11. Respalda la Revista de la Organización, "El Internacional Pentecostal", el Periódico "El Evangelista Pentecostal" y cualquier otra publicación aprobada por la Iglesia.

12. No descuida el ministerio por dedicarse a otras labores seculares mientras la Iglesia lo sostenga.

13. Vigila que se conserve en los archivos de la Iglesia un registro completo que contenga los siguientes datos:
   a. Membresía: Familias, adultos y niños.
   b. Presentación de niños.
   c. Matrimonios.
   d. Profesiones de Fe.
   e. Registro de las Finanzas.
   f. Informes mensuales y anuales.
   g. Defunciones.
   i. El libro oficial de minutas y actas de todas las reuniones de la Junta Local debidamente firmado por el Secretario (a) de la Junta Local y el Pastor (a) y sellado con el sello oficial deja Iglesia.

14. Respalda las actividades de cada una de las Asociaciones, Departamentos, Fraternidades y todas las actividades oficiales.

15. Asiste puntualmente a las Convenciones anuales y reuniones de su Distrito. En caso de ausencia debe exponer por escrito los motivos.

16. Promueve la labor social mediante:
   a. La visita a:
      1. Enfermos de la comunidad.
      2. Asilos de ancianos.
      3. Hospitales.
      4. Orfanatos.
      5. Cárceles.
   b. La ayuda social.
   c. El establecimiento de colegios de educación laica.
   d. La creación de o la colaboración con cualquier programa social de la comunidad que contribuya al bienestar social de la misma, siempre que su participación no conflija con los principios de la Iglesia.

17. Si no tiene pastorado debe ser miembro en una de nuestras Iglesias y cumplir con sus obligaciones financieras en la misma o en donde determine su Región.

18. El Pastor(a) será representante del Ejecutivo Regional ante la Congregación Local.

19. Cumple con el voto y/o Declaración Formal, firmada ante un notario público (Art. XV, Secc. B- 1- t).
20. Hace arreglos con la Junta Local e Iglesia para ausentarse, luego lo notifica a su Presbítero(a).
21. **Todo miembro del Cuerpo Ministerial <u>debe</u> informar al Ejecutivo Regional su intención de toda negociación que haya de iniciarse en relación a la compra, venta, permuta, enajenación, donación o cualquier otra clase de negocio jurídico de bienes inmuebles, en el que la Iglesia de Dios Pentecostal, M.I. Región de Puerto Rico sea compareciente. <u>Debe</u> proveer, y de no tenerlos disponibles hacer el esfuerzo razonable para adquirirlos, todos aquellos documentos que permitan al Ejecutivo Regional evaluar adecuadamente el negocio, incluyendo escrituras de hipoteca, entre otros documentos necesarios. El escrito <u>debe</u> incluir los aspectos más importantes de la negociación, incluyendo el precio y las razones para la misma**.
22. Todo miembro del Cuerpo Ministerial, Director(a) de Departamento, Director(a) de alguna dependencia o institución debe informar al Ejecutivo Regional de cualquier procedimiento judicial o administrativo en el que haya sido citado(a) o emplazado(a), y en el cual exista una controversia en la cual la Iglesia d Dios Pentecostal, M.I. sea parte peticionada o demandada directa o indirectamente. El acto de informar se hará dentro de los siguientes cinco (5) días de recibir la notificación o diez (10) días antes de la vista señalada en el Tribunal o Agencias Gubernamentales.
23. Cumple con el pago al Plan de Pensiones.
24. **Todo miembro del Cuerpo Ministerial, Director(a) de Departamento, Director(a) de alguna dependencia o institución debe informar al Ejecutivo Regional sobre cualquier intención de presentar procedimiento judicial o administrativo en el cual la Iglesia de Dios Pentecostal, M.I. sea parte Peticionaria o Demandante.**

La Sección I del Artículo VIII del Reglamento establece los siguientes **derechos** del cuerpo ministerial:[49]

1. Pastores en propiedad y Cuerpo Ministerial en funciones administrativas.
   a. Un certificado de ordenación o licencia.
   b. Estipendios por la labor pastoral y administrativa.
   c. Una credencial.
   d. Vacaciones.
   e. Licencia por enfermedad, maternidad y por otras circunstancias si es solicitado al Ejecutivo Regional o Internacional.
   f. Ser nominado (a) y ocupar posiciones a Nivel Regional e Internacional, siempre que reúna los requisitos.
   g. Ascenso.
   h. Ser considerado (a) para traslado tomando en cuenta sus méritos (experiencia pastoral, buen administrador (a), buenas relaciones humanas, cumplidor (a) de sus deberes y otros.
   i. Puede asumir un máximo de tres (3) posiciones en la Organización, incluyendo el pastorado.

---

[49] Véase, la Sección I del Artículo VIII del Reglamento, Anejo 18 de la Parte Apelante, págs. 176 – 177.

El Artículo XV del Reglamento, Sección A dispone todo lo relacionado con las **propiedades** de la IDPMI, Inc.:[50]

> **A los fines de garantizar a las congregaciones locales el pleno disfrute de sus propiedades y evitar que alguien se apropie de sus bienes inmuebles, se instituye que todos los Títulos de Propiedad se registren a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional, institución que es propietaria única. Se dispone que:**
>
> 1. **Toda la propiedad adquirida por la Región es registrada a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional Región de Puerto Rico.**
> 2. Los fondos para la adquisición de propiedades para la Organización (solares, colegios y casas pastorales, entre otros) son producidos de asignaciones del presupuesto de la Iglesia Local, de actividades lícitas, de colectas y donativos agenciados. **Estos se reciben a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional.**
> 3. Cuando se determine vender alguna propiedad de hace de mutuo acuerdo entre el Ejecutivo Regional, quien es el representante legal de la propiedad, (Véase Art. X, Secc. D, Numeral 5 Letra e del Reglamento Internacional), el o la Pastor (a) y la Junta de la Iglesia Local, después de haberse comprobado que la congregación correspondiente ha sido envuelta en el proceso.
> 4. Ninguna propiedad de la Organización puede ser cedida o arrendada en total o en parte, sin el consentimiento del Pastor (a) y la Junta de la Iglesia Local, después de haber sido debidamente acordado con la congregación y tener la aprobación del Ejecutivo Regional, como representante legal de la Organización Regional. (Véase el Art. X, Secc. D, Numeral 5, letra e del Reglamento Internacional).
> 5. La Región puede recibir congregaciones que así lo soliciten y éstas pueden conservar su título de propiedad, si fuere necesario, por un plazo razonable en tanto dicha congregación entienda que tiene mayor seguridad y conveniencia cuando los títulos de propiedad cambien a su nuevo nombre y pasen a ser propiedad de la Organización Regional.
> 6. **Toda ofrenda**, donación o recibo de cualquier bien por concepto de diezmos, ofrendas, primicias, **o por cualquier otro concepto, y sin limitación de clase alguna, transfiere a la Organización el título pleno de dominio de tal propiedad**, salvo cuando específicamente y por escrito se hace constar lo contrario; **y ninguna persona, desde el laico hasta el Ejecutivo de más alto nivel o jerarquía en la Organización, puede reclamar para sí el título de posesión u usufructo, ni dominio de ninguna clase, sobre ninguna de tales propiedades, excepto en tanto y en cuanto lo hagan en su capacidad Oficial**

---

[50] Véase, la Sección A del Artículo XV del Reglamento, Anejo 18 de la Parte Apelante, págs. 202 – 206.

**de Representante Legal de la Organización en el desempeño de su función oficial y para beneficio de ésta**.

7. **En cada una de las oficinas administrativas, como en las congregaciones locales, consta un inventario de la propiedad. Este inventario es firmado por el incumbente saliente, el entrante y un Ejecutivo Regional designado o el Presbítero (a). Disponiéndose que una copia de la misma se archiva en la Oficina Regional. El mismo incluirá:**
   a. Informe estadístico y financiero actualizado.
   b. Certificación Bancaria de Balances.
   c. Inventario del mobiliario y equipo.

En el caso de la Iglesia Local, cuando haya traslado de Pastor (a), el Presbítero (a) y la Junta Local evaluarán los tres (3) renglones mencionados para certificar su veracidad.

8. **Todo Ministro(a) en cualquiera de los grados ministeriales o cualquier funcionario ejecutivo o administrativo en todos los niveles, al cesar en sus funciones está obligado a entregar a la Organización, o a la persona que para ello se designe, toda propiedad mueble o inmueble de la Iglesia que tenía bajo su custodia mientras ocupaba tal posición**.

9. **En caso de renuncia o destitución de un Pastor(a), la feligresía no puede abrogarse la facultad de apropiarse ni adueñarse de las propiedades (Templos, solares, cuentas bancarias, vehículos mobiliario, entre otros), ya que son patrimonio de la Organización.**

10. **Todo Ministro(a), al solicitar un préstamo debe cumplir con al menos, los siguientes requisitos:** propósito del préstamo, Acta de aprobación de la Junta Local, Acta de la Asamblea con la firma de los miembros y documentos que certifiquen la situación financiera de la Iglesia.

**-B-**

De umbral, el Artículo 741 del Código Civil de Puerto Rico (2020) nos dicta la noción del derecho de propiedad:

> La propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra.
> La propiedad concede el derecho de gozar y disponer de las cosas sin más limitaciones que las establecidas en las leyes.
> El propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla.
> Cuando el derecho de propiedad recae sobre cosas se llama dominio.[51]

---

[51] Véase, Apéndice, a la pág. 182. Énfasis nuestro.

Es decir, cuando hablamos del derecho de propiedad reconocemos la acción de dominio que puede ejercer el propietario sobre la cosa. Por ello, el propietario puede ejercer una acción contra el tenedor y el **poseedor** de la cosa para reivindicarla. En ese sentido, estamos hablando de **derechos reales** que el Artículo 697 del Código Civil de Puerto Rico (2020) define como:

> ...[A]quellos que crean una relación inmediata y directa entre un bien y la persona a cuyo poder aquel se encuentra sometido, facultando al titular a hacerlos valer frente a todos.[52]

Ahora, en lo que respecta al derecho real de **posesión**, el Artículo 703 del Código Civil de Puerto Rico (2020) lo define a continuación:

> Posesión es la tenencia de una cosa o el disfrute de un derecho por una persona.[53]

El Artículo 706 del Código Civil de Puerto Rico (2020), nos indica que la posesión puede ser ejercida **por la misma persona que los tiene y disfruta, o por otra a su nombre**.[54] Por ello, el Artículo 707 del Código Civil establece que la posesión de los bienes se puede tener en uno de dos conceptos:

> **(a)** en el de **dueño**; o
> **(b)** en el de **tenedor**, para conservarlos o disfrutarlos, perteneciendo el dominio a otra persona.[55]

De igual modo, el Artículo 704 del Código Civil nos distingue dos (2) clase de posesión; a saber, la **natural** y la **civil**:

> **Posesión natural** es la <u>tenencia de una cosa o el disfrute de un derecho por una persona</u>.
> **Posesión civil** es esa misma tenencia o disfrute, <u>unidos a la intención de haber la cosa o derecho como suyos</u>.[56]

Por lo cual, el Artículo 714 del Código Civil establece que la posesión puede adquirirse de modo originario o de modo derivativo:

> **La posesión originaria** es aquella que se adquiere por la ocupación material de los bienes poseídos, o por el hecho de estos quedar sujetos a la acción de la voluntad de quien

---

[52] 31 LPRA sec. 7661.
[53] 31 LPRA sec. 7821.
[54] 31 LPRA sec. 7827.
[55] 31 LPRA sec. 7825. Énfasis nuestro.
[56] 31 LPRA sec. 7822. Énfasis nuestro.

la adquiere, sin el concurso de la voluntad del poseedor anterior.

**La posesión derivativa** se adquiere por los actos y las formalidades legales establecidas para adquirir tal derecho.[57]

A todo lo antes dicho, el Artículo 708 del Código Civil hace una presunción del concepto en que se disfruta la posesión:

Se presume que la posesión se sigue disfrutando **en el mismo concepto en que se adquirió, mientras no se pruebe lo contrario**.[58]

También, el Artículo 737 del Código Civil hace la siguiente presunción de posesión en el tiempo intermedio:

Se presume que el poseedor actual que demuestra su posesión **en época anterior**, ha poseído durante el tiempo intermedio, mientras no se demuestre lo contrario. [59]

Por otra parte, cabe destacar que el Artículo 719 del Código Civil establece tres (3) actos que **no afectan la posesión**, a saber:

**(a)** los autorizados; **(b) los ejecutados clandestinamente y sin conocimiento del poseedor de una cosa**; **(c)** los ejecutados con violencia.[60]

Por lo tanto, los Artículos 723, 724 y 725 de nuestro Código Civil están predicados en la protección de la posesión. En ese sentido, el *"poseedor puede, además de las **acciones penales**, ejercer actos o acogerse a los medios de **legítima defensa** de su posesión"*.[61] Además, el poseedor tiene el derecho de la **protección interdictal** a ser respetado en su posesión, *"si es inquietado en ella indebidamente, debe ser amparado o restituido en dicha posesión por los medios que la ley procesal establece"*.[62] De igual forma, *"la persona con derecho a poseer un bien tiene acción para promover el **juicio de desahucio** contra cualquier poseedor sin derecho a poseer"*.[63]

Conforme a lo antes indicado, el Artículo 738 del Código Civil establece tres (3) maneras de **perder la posesión**; a saber:

---

[57] 31 LPRA sec. 7841. Énfasis nuestro.
[58] 31 LPRA sec. 7826. Énfasis nuestro.
[59] 31 LPRA sec. 7894. Énfasis nuestro.
[60] 31 LPRA sec. 7846. Énfasis nuestro.
[61] Artículo 723. — Defensa. 31 LPRA sec. 7861.
[62] Artículo 724. — Protección interdictal de la posesión. 31 LPRA sec. 7862.
[63] Artículo 725. — Acción de desahucio. 31 LPRA sec. 7863.

**(a)** por abandono de la cosa; **(b)** por cesión hecha a otro por título oneroso o gratuito; o **(c)** por destrucción o pérdida total de la cosa, o por quedar ésta fuera del comercio.[64]

Además, el mismo Artículo 738 del Código Civil, nos indica que la posesión de hecho **también se pierde** *"por la posesión de otro por más de un (1) año, aun en contra de la voluntad del antiguo poseedor"*.[65]

En virtud del ordenamiento antes articulado, es que se autoriza al andamiaje judicial a intervenir como hecho de todo poseedor.[66] Por lo cual, *"[n]o es determinante si la posesión está o no justificada, sino más bien que haya una existencia de posesión de hecho que, en determinado momento, esté expuesta a perderse o ya se haya perdido"*.[67]

**-C-**

Como vimos, nuestro Código Civil establece un ordenamiento dirigido al reconocimiento y la protección del derecho de posesión. Es preciso añadir que los Artículos 690 al 695 del Código de Enjuiciamiento Civil establecen el mecanismo del recurso extraordinario del **injunction** para recobrar la posesión de propiedad inmueble.[68]

En específico, el Artículo 690 del Código de Enjuiciamiento Civil establece cuando se concederá el *injunction* para **retener o recobrar** la posesión material de una propiedad inmueble :

> Se concederá un injunction para retener o recobrar la posesión material de propiedad inmueble, a instancia de parte interesada, siempre que ésta demuestre, a satisfacción del tribunal, que ha sido perturbada en la posesión o tenencia de dicha propiedad por actos que manifiesten la intención de inquietarle o despojarle, o cuando haya sido ya despojada de dicha posesión o tenencia.[69]

---

[64] 31 LPRA sec. 7895. Énfasis nuestro.
[65] *Íd.*
[66] J.R. Vélez Torres, *Curso de Derecho Civil: Los Bienes, Los Derechos Reales*, 5ta ed., Madrid, Ed. Offirgraff, 2005, T. II, pág. 132 citado en *Miranda Cruz v. SLG Ritch*, 176 DPR 951, 960 (2009).
[67] *Íd.*
[68] Arts. 690 – 695 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA sec. 3561 – 3566.
[69] 32 LPRA sec. 3561.

El propósito fundamental del *injunction* para retener o recobrar la posesión está destinado para *"…dar rápida y eficaz protección a toda persona que encontrándose en la posesión quieta y pacífica de un inmueble <u>sea perturbada en o despojada de esa posesión por el acto ilegal de otra persona"</u>.*[70]

El Artículo 691 del Código de Enjuiciamiento Civil exige (2) dos elementos básicos, entre otro, que deben constar en la demanda:

> La demanda será redactada y jurada de acuerdo con las disposiciones del Código de Enjuiciamiento Civil, y hará constar:
> **(1)** Que el demandante, **dentro del año** precedente de la presentación de la demanda, estaba en la posesión real de la propiedad que en dicha demanda se describe, si se trata de recobrarla, y estaba y está, si de retenerla.
> **(2)** Que ha sido perturbado o despojado de dicha posesión o tenencia.
> Deberá también describir claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste. [71]

El Tribunal Supremo de Puerto Rico ha sostenido: *"[q]ue una demanda que alegue que el demandante **posee determinado inmueble, [a]ctos de perturbación y de despojo por los demandados, y que éstos ocupan parte de la finca, detentando así la posesión, es suficiente"*.[72] De igual forma, un requisito importante es precisar que el demandante estuvo en posesión en *determinada fecha dentro del año con anterioridad a la presentación de la demanda y si se le privó de tal posesión*.[73]

Además, se ha expresado que el despojo que da derecho a acudir a solicitar un interdicto posesorio *"[e]s aquel que ha sido realizado por el demandado u otra persona por orden de éste, sin*

---

[70] *Ramos v. Puig,* 61 DPR 83, 86 (1942).
[71] 32 LPRA sec. 3562. Énfasis nuestro.
[72] *Miranda Cruz v. SLG Ritch, supra*, 962. Véase, además, *Buxeda Jr v. Escalera,* 47 DPR 647, 651 (1934).
[73] *Miranda Cruz v. SLG Ritch, supra*, a la pág. 962. Véase, además, E. Fontánez Torres & R. Ramírez Ballagas, *Derechos Reales,* 80 Rev. Jur. UPR 779, 781 – 783 (2011).

*intervención judicial"*.[74] En los interdictos posesorios, el demandante no tiene que alegar pérdida de la posesión mediante violencia o medios clandestinos.[75]

Por último, una vez concedido el interdicto posesorio, el Artículo 695 del Código de Enjuiciamiento Civil dispone lo siguiente:

> El predicho *injunction* ordenará que el demandante sea restablecido en la posesión y requerirá al perturbador para que en lo sucesivo se abstenga de cometer tales actos u otros que manifiesten el mismo propósito, bajo apercibimiento de desacato al tribunal por desobediencia al predicho injunction.[76]

Sabido es que la sentencia que se dicte en casos de interdictos para recobrar la posesión de una propiedad no tiene autoridad de cosa juzgada sobre el derecho de las partes contendientes sobre la finca en cuestión.[77] Nótese, *"[q]ue es el hecho de la posesión de una propiedad inmueble, no el derecho a su posesión, lo que puede litigarse en acciones interdictales para retener o recobrar la posesión de inmuebles"*.[78]

**-III-**

En esencia, la parte apelante apunta que el TPI incidió al denegar el interdicto posesorio a su favor, basado en que la parte apelada estuvo en posesión del inmueble en controversia desde mayo 2021, sin contar con la calidad en la que estuvieron ocupando la propiedad. Es forzoso concluir que el foro sentenciador erró al denegar el interdicto posesorio. **Explicamos.**

**En primer orden**, desde la **década de 1940** la Iglesia de Dios Pentecostal M.I., Inc., estableció una pequeña y humilde congregación en el Bo. Piedra Gorda de Camuy. Para el **24 de febrero de 1960** la IDPMI, Inc., fue donataria de un predio de terreno de 1,551 p/c en el barrio Piedra Gorda de Camuy, P.R., sitio de

---

[74] *Ramos v. Puig,* 61 DPR 83, 85 (1942).
[75] *Martorell v. Municipio de Dorado,* 70 DPR 380, 383 – 384 (1949).
[76] 32 LPRA sec. 3566. Énfasis nuestro.
[77] *Miranda Cruz v. SLG Ritch, supra,* a las págs. 967 – 968 (2009).
[78] *Miranda Cruz v. SLG Ritch, supra,* a la pág. 967; *Disdier Pacheco v. García,* 101 DPR 541, 547 (1973).

El Ojo de Agua.[79] Ya el **27 de marzo de 1971** la IDPMI, Inc., hizo la compraventa por $1,350 de la propiedad inmueble de 900 metros cuadrados, otorgada mediante escritura pública a favor de la Iglesia de Dios Pentecostal del Bo. Piedra Gorda de Camuy.[80] Desde entonces, ha ejercido dominio sobre dicha propiedad al construir, remodelar y ampliar la **Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy y otras facilidades por los diversos lideres pastorales que han llevado el ministerio bajo el nombramiento y supervisión de la IDPMI, Inc.[81]

Ahora bien, alrededor de poco más diez (10) años, el señor González Vilella fue designado por la IDPMI, Inc., como pastor en propiedad a la **Iglesia de Dios Pentecostal MI** de Camuy. Por lo que estaba sujeto y obligado al cumplimiento de sus deberes ministeriales de pastor, a tono con lo establecido por el Reglamento de la IDPMI, Inc.

Conforme a la Sección H inciso 7 del Artículo VIII del Reglamento, concerniente a las propiedades bajo su **posesión como pastor**, se establece el siguiente deber:[82]

[…]
7. **Vela por la conservación y el buen uso de los bienes de la Iglesia, cuyo <u>propietario</u> es la Organización.**

---

[79] Véase, Donación, Anejo 10 de la Parte Apelante, pág. 99.

[80] Véase, la Escritura Pública de 27 de marzo de 1971, Anejo 11 de la Parte Apelante, págs. 100 – 103. Además, en 1992 la IDPMI, Inc., autorizó al entonces pastor, Rdo. Félix Núñez Prieto a gestionar ante el Negociado de Contribución sobre la Propiedad del Departamento de Hacienda de Puerto Rico la exención contributiva permitida por ley para el solar de 900 metros cuadrados, adquirida el 27 de marzo de 1971, mediante escritura pública y donde se construyó la **Iglesia de Dios Pentecostal MI** del Bo. Piedra Gorda de Camuy. Véase, Carta de Hacienda, Anejo 12 de la Parte Apelante, pág. 104.

[81] Véase, la Historia de la Iglesia de Dios Pentecostal del Bo. Piedra Gorda de Camuy, Anejo13 y 14 de la Parte Apelante, págs. 105 – 113. Cabe destacar que en los primeros 50 años de la IDPMI, Inc., en el Bo. Piedra Gorda de Camuy, el primer pastor nombrado fue el hermano Juan Román Pérez en 1948; luego siguió el hermano Ángel Morales Agosto en 1952 y al ser trasladado continuó el hermano Clemente Sepúlveda; en 1957 el nuevo pastor fue el hermano Pedro Rosario Alvarado por un periodo de 20 años; luego del traslado del pastor Rosario en 1977, le siguió el hermano Braulio Rosado quien fue trasladado en 1981, y le sucedió en el pastorado el hermano Manuel Echevarría Laureano hasta el 1987, que fue sustituido por el hermano Félix Núñez Prieto. Para el 1995 fue nombrado el hermano Gilberto Rosado Martínez.

[82] Véase, la Sección H del Artículo VIII del Reglamento, Anejo 18 de la Parte Apelante, págs. 172 – 176.

Es decir, el **derecho de posesión** que tiene el pastor sobre la **Iglesia de Dios Pentecostal MI** de Camuy, **se deriva** de su nombramiento y deber ministerial como pastor de la IDPMI, Inc., en el desempeño de su función oficial y para beneficio de la Organización. Todavía más claro, la Sección A inciso 6 del Artículo XV del Reglamento, en lo pertinente establece: ... "y ninguna persona, desde el laico hasta el Ejecutivo de más alto nivel o jerarquía en la Organización, puede reclamar para sí el título de **posesión** u usufructo, ni dominio de ninguna clase, sobre ninguna de tales propiedades, **excepto en tanto y en cuanto lo hagan en su capacidad Oficial de Representante Legal de la Organización en el desempeño de su función oficial y para beneficio de ésta"**.

**En segundo orden**, el **8 de octubre de 2023** el apelado **renuncia** como pastor de la **Iglesia de Dios Pentecostal M.I.**, y se **desafilia**, junto a otros feligreses, de la IDPMI, Inc. En la carta de renuncia expresó:

> **A:** IGLESIA DE DIOS PENTECOSTAL MI MOVIMIENTO INTERNACIONAL
>
> **ASUNTO:** DESAFILIACIÓN
>
> Por medio de la presente le notificamos que tanto su Presidente y Pastor Ricardo L. González Vilella, como la junta local y miembros de La Iglesia Pentecostal Barrio Piedra Gorda INC. se **desafilia** de forma inmediata e irrevocablemente, **dado por concluida toda actividad y compromiso a Iglesia de Dios Pentecostal MI Movimiento Internacional**. **Por lo antes expuesto hago entrega de mis credenciales**. No obstante, continuaré como Presidente y Pastor de La Iglesia Pentecostal Barrio Piedra Gorda INC.
> Esta decisión fue tomada mediante asamblea extraordinaria el Domingo, 08 de octubre de 2023. Adjunto listado de miembros en conformidad con esta decisión.
> Atentamente,
> Ricardo L González Vilella - Presidente y Pastor.[83]

Nótese, que a pesar de que en la carta del **8 de octubre de 2023** la parte apelada **comunicó** su desafiliación inmediata e irrevocable, entrega de credenciales y renuncia al puesto de pastor de la **Iglesia de Dios Pentecostal M.I.**, anunció que **continuaría**

---

[83] Véase, Carta de Desafiliación, Anejo 15 de la Parte Apelante, págs. 114 – 117. Énfasis nuestro.

**en la posesión** de dicha propiedad de la IDPMI, Inc., bajo la nueva corporación de nombre **"Iglesia Pentecostal Barrio Piedra Gorda INC."**.

Ante esa acción, el **25 de octubre de 2023** la IDPMI, Inc., le exigió la entrega de todas las propiedades de la Organización. En lo atinente a esa renuncia y desafiliación, el Artículo XV del Reglamento, Sección A, incisos 1, 8 y 9 disponen lo relacionado con las **propiedades** de la IDPMI, Inc., cuando ocurra un cese de funciones o renuncia del Pastor y la feligresía:

> A los fines de garantizar a las congregaciones locales el pleno disfrute de sus propiedades y <u>evitar que alguien se apropie de sus bienes inmuebles</u>, se instituye que todos los Títulos de Propiedad se registren a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional, institución que es propietaria única. Se dispone que:
> 1. **Toda** la propiedad adquirida por la Región es registrada a nombre de la Iglesia de Dios Pentecostal, Movimiento Internacional Región de Puerto Rico.
>
> […]
>
> 8. **Todo Ministro(a) en cualquiera de los grados ministeriales o cualquier funcionario ejecutivo o administrativo en todos los niveles, <u>al cesar en sus funciones está obligado a entregar a la Organización, o a la persona que para ello se designe, toda propiedad mueble o inmueble de la Iglesia que tenía bajo su custodia mientras ocupaba tal posición</u>**.
> 9. **<u>En caso de renuncia o destitución de un Pastor(a), la feligresía no puede abrogarse la facultad de apropiarse ni adueñarse de las propiedades (Templos, solares, cuentas bancarias, vehículos mobiliario, entre otros), ya que son patrimonio de la Organización.</u>**[84]

A pesar del Reglamento antes citado, el **31 de octubre de 2023** la parte apelada le envió una carta a la representación legal de la IDPMI, Inc., en la que se negó a entregar las referidas propiedades. Adujo que era el Presidente de nueva **Iglesia**

---

[84] La Sección B, inciso 15 del Artículo IV del Reglamento le impone el **deber** a los miembros del Ejecutivo Regional de tomar control de toda propiedad:
> 15. **Toma control de toda propiedad (<u>templos</u>, <u>colegios</u>, <u>casas pastorales</u>, <u>solares</u>, cuentas bancarias, vehículos, mobiliario y otros <u>cuando un Pastor (a) o feligresía deciden renunciar o sean destituidos de nuestra Organización</u>.**

**Pentecostal Barrio Piedra Gorda INC.**,[85] por lo que ahora, era titular de todas las propiedades muebles e inmuebles allí ubicadas.

Por ello, el **3 de diciembre de 2023** la IDPMI, Inc., solicitó al TPI un interdicto posesorio para recobrar la posesión del inmueble.

**En tercer orden**, veamos si la IDPMI, Inc., cumplió con los requisitos para el interdicto posesorio.

**Primeramente**, el **8 de octubre de 2023** ocurre la renuncia y desafiliación del señor González Vilella **como pastor de la IDPMI, Inc.**, y este se niega a entregar la propiedad inmueble. Desde esa fecha la **posesión derivativa** que emanaba de su puesto oficial como pastor de la Organización **quedó sin efecto**.

**Segundo**, desde el 8 de octubre de 2023 se inició el **término de un año** que dispone el citado Artículo 738 del Código Civil, para que la IDPMI, Inc., evite perder la **posesión de hecho** como antiguo poseedor o poseedor originario.

**Tercero**, dicho término quedó **interrumpido** el **3 de diciembre de 2023** cuando la IDPMI, Inc., presentó la acción de interdicción posesorio.

En fin, a tono con lo antes expresado no existe controversia fáctica sobre de **posesión real de la propiedad** que la IDPMI, Inc., disfrutaba **antes** de que el **13 de octubre de 2023**, el apelado renunciara de todas sus funciones oficiales como pastor ordenado por la IDPMI, Inc., y se negara a entregar la propiedad inmueble de esa Organización.

El TPI se equivoca al ignorar el hecho material de que los derechos y deberes ministeriales del señor González Vilella, como pastor ordenado por la IDPMI, Inc., lo convertían en un representante de la Organización que ostentaba la posesión

---

[85] En violación al Reglamento de la IDPMI, Inc., el 21 de mayo de 2021 el apelado y otros feligreses crearon la corporación Iglesia de Dios Pentecostal, INC.

derivativa de la **Iglesia de Dios Pentecostal MI**, con el fin oficial de velar por la conservación y el buen uso de esta.

Aunque en mayo 2021, la parte apelada creó la nueva corporación **Iglesia de Dios Pentecostal INC.**, —**sin notificación ni autorización alguna de la Organización**— y en violación al Reglamento, ello no significó que la IDPMI, Inc., perdió su derecho de posesión, pues su representante ministerial —el señor González Vilella— continuó fungiendo como pastor en propiedad de la Organización, rindiendo informes y representando a la IDPMI, Inc., en todos los asuntos, hasta que el **8 de octubre de 2023**, presentó su renuncia y desafiliación de forma inmediata e irrevocable y se negó a entregar la propiedad inmueble a la IDPMI, Inc. Desde ese momento, el **derecho de posesión** de la Organización fue perturbado por la parte apelada.

Conforme a los hechos del caso y el derecho aplicable, la IDPMI, Inc., tiene derecho a recobrar la posesión de su inmueble y a que la misma sea respetada. La parte apelante cumplió con todos los requisitos para obtener un interdicto posesorio a su favor al presentar la demanda dentro del plazo de un año y demostrar que tenía posesión real de la propiedad **antes** de ser perturbada por la parte apelada, quien sin razón alguna, detentaba una posesión que a todas luces, resulta ilegal. Frente a este escenario, es forzoso concluir que el TPI erró en su determinación.

Por consiguiente, el TPI incidió al denegar el interdicto posesorio a favor de la parte apelante. En virtud de lo antes expuesto, resolvemos revocar el dictamen apelado.

**-IV-**

De conformidad con lo antes expuesto, **revocamos** la *Sentencia Parcial* apelada y concedemos el interdicto posesorio a favor de la IDPMI, Inc. Así, se devuelve el caso al TPI para la

continuación de los procesos, conforme a lo expuesto en este dictamen.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones